(386 P.3d 532)

No. 114,269

STATE OF KANSAS, *Appellee*, v. SETH TORRES, *Appellant*.

—

Opinion filed December 23, 2016.

*Randall L. Hodgkinson* and *Susan E. Bandy*, legal intern, of Kansas Appellate Defender Office, for appellant.

*Carissa E. Brinker*, assistant county attorney, *Marc Goodman*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., BUSER and LEBEN, JJ.

LEBEN, J.: Under police surveillance, Justin Barrett bought about 3.5 grams of methamphetamine from Seth Torres on October 9, 2014, using $220 cash with recorded serial numbers. Torres left the drug-deal location in a car, and a police officer pulled him

over. After Torres was arrested, another officer searched the car he'd been in and found $200 of the recorded money. A jury convicted Torres of distributing methamphetamine and using a communication device to facilitate a drug felony.

On appeal, Torres claims that the search of the car was illegal, so the district court should not have allowed the State to present evidence of the $200 found in the car. Warrantless searches are generally illegal, but this search was justified as a search incident to arrest and under the automobile exception to the warrant requirement, so the district court correctly admitted the evidence at trial. Torres also argues that there was insufficient evidence to support the required venue element of the communication-device charge—that he used a communication device *in Lyon County*, where he was charged and tried, to facilitate a drug felony—but we find no problem with the evidence supporting venue. First, the Kansas Supreme Court ruled in *State v. Castleberry*, 301 Kan. 170, 177, 339 P.3d 795 (2014), that there's proper venue—meaning the State can prosecute a crime there—at each location where the parties to a telephone call are located, at least if the defendant knew the location of the person he was talking to. Here, the evidence showed that Barrett was in Lyon County when he called Torres about the deal, and Torres called Barrett to change the drug-deal location when he knew that Barrett was already at the first location they had agreed upon, which was in Lyon County. Second, there's normally no requirement that a defendant know what county he or she is committing a crime in for the State to prosecute the crime there, and it's clear in this case that Barrett was in Lyon County when Torres called him about the drug deal. Because the search was authorized and venue was proper, we affirm the district court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Barrett was facing criminal charges for distributing methamphetamine, so he made a deal with the police: he would buy methamphetamine from Torres under police surveillance, and the police would put in a good word for Barrett with the prosecutor's office. Barrett arranged to buy methamphetamine from Torres on

October 9, 2014, and made the purchase later that evening while the police watched and listened in. Barrett eventually pled guilty to possession of methamphetamine, a less serious crime than distribution. The police charged Torres with distribution of methamphetamine and using a communication device (a cell phone) to commit a drug felony.

At trial, Dominick Vortherms, an Emporia police officer, and Heath Samuels, a Lyon County sheriff's deputy, testified about arranging and observing the drug deal. Vortherms said he had listened as Barrett called Torres, who was listed as "Swth" in Barrett's phone (reflecting "Seth" but with a typo), to set up a deal; Barrett placed the call from the Emporia Police Department. Vortherms then searched Barrett and Barrett's car to make sure Barrett didn't have any drugs or money. Barrett wore a wire so the police could listen to the transaction, and Vortherms gave Barrett $220 in cash after recording the serial numbers of the bills to help keep track of them. Samuels said that he followed Barrett from the police station to a house in Emporia (the county seat of Lyon County), where the purchase was supposed to take place. Vortherms was already parked near that house so he could observe the purchase.

Barrett also testified at trial, generally confirming the officers' account of setting up the purchase. Barrett said he had either called or texted Torres around 4 or 5 in the afternoon that day, while Vortherms was present. Barrett said that the deal was supposed to take place at Torres' girlfriend's house (located in Emporia) but that when he had arrived there, Torres had contacted him on his cell phone to change the location to an Emporia apartment complex that he called the "Skittles Apartments." The officers followed Torres to the new location and set up to observe the drug deal. Samuels could see Barrett in the parking lot; Vortherms couldn't see Barrett but could hear the transaction through the wire that Barrett was wearing, so the two officers stayed on the phone with each other for the entire transaction, relaying information back and forth.

Eventually, Samuels saw a white car pull into the parking lot of the apartment complex; Vortherms confirmed to Samuels that Torres had arrived. (Samuels testified that he knew what Torres looked like, and Vortherms said he recognized Torres' voice on the wire

recording.) Barrett got out of his car and walked over to Torres. Samuels could see them standing together underneath a streetlight, but he didn't see the drugs or money actually change hands. Barrett testified that he bought around 3.5 grams of methamphetamine from Torres. Barrett then got into his car and drove away; Vortherms followed him back to the police station. At the station, the police officers searched Barrett and his car again, and Barrett surrendered the drugs and the wire.

Samuels testified that after the drug deal, Torres had gone into one of the apartments. Samuels remained at the complex to watch that apartment while Vortherms prepared a search warrant for the $220 that Barrett had paid Torres for the drugs. While Samuels was waiting, Vortherms told him that the substance Barrett had received from Torres had field-tested positive for methamphetamine. (At trial, a forensic scientist from the Kansas Bureau of Investigation testified that she had weighed and tested the substance and found it was 3.3 grams of methamphetamine.) At some point, Samuels moved his observation point to an unmarked car in the parking lot about 20 yards from the apartment. From there, he saw Torres come out of the apartment and get into the passenger side of a car that had parked right next to Samuels' car. Samuels asked an officer who had been standing by as backup to follow and stop the car that Torres was in. After 10 or 15 minutes, another officer arrived to watch the apartment, and Samuels drove to the traffic stop.

When Samuels arrived at the traffic stop, both the driver and Torres were in custody, sitting in police cars. Samuels arrested Torres and read him his rights; Torres said he wanted to speak with an attorney, and another officer took Torres to jail. The driver of the car declined Samuels' request for permission to search the car. Samuels then walked around the car and looked in the windows with a flashlight. On the passenger floorboards, Samuels saw a roll of cash sticking out of an open black sunglasses bag. Samuels testified that in his experience as a narcotics officer, drug dealers tend to keep their money in similar rolls. Samuels got the car keys from the driver and retrieved the money; the roll contained $485, $200 of which matched the recorded money that Barrett had used to buy the drugs. The officers also eventually obtained a warrant and

searched the apartment that Torres had been in, but they didn't find any more of the recorded cash.

Before trial, Torres had moved to suppress evidence of the $200 found in the car, arguing that the search of the car was illegal. After a hearing, the district court denied that motion, and the evidence was admitted over Torres' objection at trial.

The jury found Torres guilty of distributing methamphetamine and using a cell phone to commit a drug felony. Based on Torres' criminal-history score and the severity level of the distribution crime, the district court sentenced Torres to the presumptive standard sentence of 51 months in prison with 36 months of postrelease supervision. The district court also imposed an 8-month sentence for the cell-phone conviction, to be served concurrently with (at the same time as) the 51-month sentence.

Torres has appealed to this court.

## ANALYSIS

### I. *The Warrantless Search of the Car Was Justified as a Search Incident to Arrest and by the Automobile Exception.*

Torres first argues that the district court should have suppressed the evidence of the $200 of recorded cash that Samuels found in the car because Samuels' search of the car was illegal.

When the district court has ruled on a motion to suppress, we review that decision with a two-part standard of review. *State v. Patterson*, 304 Kan. 272, 274, 371 P.3d 893 (2016). First, we ask whether the factual findings are supported by substantial evidence—that is, evidence that a reasonable person would find adequate to support a conclusion. 304 Kan. at 274; *State v. Talkington*, 301 Kan. 453, 461, 345 P.3d 258 (2015). Second, we review the ultimate legal conclusions anew, without any required deference to the district court. *Patterson*, 304 Kan. at 274.

The Fourth Amendment to the United States Constitution and Section 15 of the Kansas Constitution Bill of Rights protect us from unreasonable searches and seizures; courts have interpreted that to require that police obtain search warrants in most cases. Searches without a warrant are automatically unreasonable and invalid unless one of several recognized exceptions to the search-warrant

requirement applies. *State v. Neighbors,* 299 Kan. 234, 239, 328 P.3d 1081 (2014). The exceptions potentially relevant to this case cover search incident to a lawful arrest, probable cause·to search accompanied by exigent circumstances (the "automobile exception"), and plain view. 299 Kan. at 239. The State has the burden to demonstrate that a warrantless entry and the ensuing search and seizure were lawful. 299 Kan. at 240. If no exception applies, the search is unconstitutional, and any evidence discovered during the search usually must be excluded from trial. *State v. Powell,* 299 Kan. 690, 694-95, 325 P.3d 1162 (2014).

With that background, let's look more specifically at the exceptions that may apply here.

*Search Incident to an Arrest*

When an officer makes a lawful arrest, he or she can search the arrestee and the area within the arrestee's immediate control without getting a warrant—this is called a search incident to arrest. *Chimel v. California,* 395 U.S. 752, 763, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969). This warrant exception exists for two reasons: it protects officer safety by allowing police to search for weapons that an arrestee could reasonably access, and it prevents an arrestee from destroying or concealing evidence within his or her reach. 395 U.S. at 763.

In the context of vehicle searches, police can make two kinds of warrantless searches incident to arrest, one based on each of *Chimel's* justifications.

- After the lawful arrest of a passenger, police can search the passenger area and any containers found in that area, but only when the arrested passenger is unsecured and within reaching distance of the passenger area at the time of the search. *Arizona v. Gant,* 556 U.S. 332, 343-44, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009); *State v. Carlton,* 297 Kan. 642, 643, 304 P.3d 323 (2013). This type of search incident to arrest is obviously not at issue here because Torres was nowhere near the passenger compartment of the vehicle when Samuels searched it—Torres had, in fact, already been taken to jail.

- Additionally, an officer can search a vehicle incident to arrest if he or she reasonably believes that evidence relevant to the crime of arrest might be found in the vehicle. *Gant*, 556 U.S. at 343-44; *Carlton*, 297 Kan. at 643. An officer cannot search a vehicle incident to arrest for crimes *other than* the crime of arrest, so when a person is arrested for committing a traffic infraction (like speeding or failing to use a turn signal), police generally won't have a reasonable basis to believe there's evidence of that crime in the vehicle. *Gant*, 556 U.S. at 343-44. But when a person is arrested for other types of crimes, an officer will sometimes have reason to believe there's evidence of those crimes in the vehicle. 556 U.S. at 344.

Here, the district court ruled that Samuels' search of the car was a lawful search incident to arrest—in other words, that it was reasonable for Samuels to believe the car might contain evidence of Torres' drug deal. We agree. Samuels had arranged and observed a drug deal in which Barrett bought methamphetamine from Torres. Although Samuels didn't actually see the drugs or money change hands, by the time he was searching the vehicle, Samuels knew (from being in touch with Vortherms) that the substance Barrett had received from Torres had field-tested positive for methamphetamine. Thus, it was reasonable for Samuels to believe that since Barrett had the drugs, Torres had the $220 that Barrett paid for the drugs.

Torres argues that Samuels' belief wasn't reasonable because Samuels had seen Torres first go into an apartment after the drug deal and because Samuels had been within 3 feet of Torres when Torres got into the car and hadn't seen Torres carrying anything. While these facts could support an inference that Torres left the cash in the apartment (an inference that the officers used to get a search warrant for the apartment), that particular inference is no more or less reasonable than the inference that Torres took the cash with him when he got in the car. It was reasonable for Samuels to believe that Torres kept his cash with him and that the cash was therefore in the car. Police would have cause to search both in the car and in the apartment; they are not required to choose only one site to search.

*The Automobile Exception*

The district court also ruled that the automobile exception to the warrant requirement justified Samuels' search. This exception is based on the mobility of cars and the lower expectation of privacy that people have in them (as compared to their homes). *State v. Sanchez-Loredo*, 294 Kan. 50, 57, 272 P.3d 34 (2012). Courts tend to characterize the automobile exception as a sub-category of the "probable cause plus exigent circumstances" exception, under which officers can perform a warrantless search if they have both probable cause and exigent circumstances. *State v. Stevenson*, 299 Kan. 53, 58, 321 P.3d 754 (2014); *Sanchez-Loredo*, 294 Kan. at 56. Probable cause is a practical, common-sense decision about whether a crime has been committed and whether there's a fair probability that contraband or evidence of a crime will be found in a particular place. *State v. Mullen*, 304 Kan. 347, 353, 371 P.3d 905 (2016). Circumstances are "exigent" when an officer reasonably believes evidence could soon be lost, destroyed, removed, or concealed. *Sanchez-Loredo*, 294 Kan. 50, Syl. ¶ 3. In the case of cars, exigent circumstances usually exist because cars are mobile and can drive away, taking evidence with them. Here, it's obvious that exigent circumstances existed because the car was mobile. See *Stevenson*, 299 Kan. at 58; *Sanchez-Loredo*, 294 Kan. at 59.

So did Samuels have probable cause to believe that evidence of the drug sale would be in the car? Yes. Samuels knew that Barrett had arranged to buy drugs from Torres while under police surveillance. Samuels, a narcotics officer, saw what he reasonably believed to be a drug deal. Samuels knew that, before the arranged drug deal, police had searched Barrett and his car and hadn't found any drugs and that, after the drug deal, Barrett had given the police a white crystal substance that field-tested positive for methamphetamine. Samuels knew that Barrett had bought the drugs with $220 of cash with recorded serial numbers. Thus, Samuels reasonably believed that a crime had occurred (the sale of illegal drugs) and that there was a fair probability that evidence of the crime—the $220—would be found with Torres, in the car. Torres makes the same argument here that he did for the search-incident-to-arrest exception: that because Samuels saw him first go into an apartment

and then get into the car without anything in his hands, Samuels' inference that Torres had the money with him wasn't reasonable. Again, this argument doesn't work because both inferences are equally plausible: Torres could have left the money in the apartment, but he just as easily could have taken it with him. Since Samuels had both probable cause and exigent circumstances, we agree that the automobile exception justified his search.

*Plain-View Exception*

The district court also ruled that the search was justified by the plain-view exception. Under it, an officer can seize evidence of a crime if (1) the officer's initial intrusion was lawful, (2) the discovery of the evidence was inadvertent, and (3) the incriminating character of the evidence was immediately apparent. *State v. Ewertz*, 49 Kan. App. 2d 8, 14, 305 P.3d 23 (2013). But just because an officer is in a lawful position when he or she *sees* the evidence doesn't automatically justify actually *seizing* the evidence. *State v. Fisher*, 283 Kan. 272, 293, 154 P.3d 455 (2007). For example, when officers saw marijuana growing in plain view on a defendant's back porch, the officers were not permitted to enter the property and seize the plants unless they got a warrant or another warrant exception applied. 283 Kan. at 294-96 (discussing *Commonwealth v. English*, 839 A.2d 1136 [Pa. Super. 2003], as an example).

Here, Samuels lawfully looked into the car windows with his flashlight and saw the money rolled up and sticking out of the sunglasses bag. See *State v. McCammon*, 45 Kan. App. 2d 482, 487, 250 P.3d 838 (2011) (listing Kansas cases holding that using a flashlight to look into car windows at night doesn't amount to a search). However, Samuels couldn't rely on his plain view of the money to support actually seizing it because he hadn't yet entered the car; his intrusion into the car needed to be justified by another exception. Thus, the plain-view exception doesn't apply here. But Samuels' search was nonetheless justified under the automobile exception and as a search incident to arrest, so while the district court's ruling about the plain-view exception was wrong, it doesn't change the result.

II. *Sufficient Evidence Supports Torres' Conviction for Illegal Use of a Communication Facility to Commit a Drug Felony.*

Next, Torres argues that the evidence isn't sufficient to support his conviction for using a cell phone to facilitate a drug felony because the State must prosecute crimes in the county in which they occur and nothing in the record shows that he committed this crime in Lyon County.

Generally, the jury is the factfinder in a felony criminal case, and an appeal challenging the sufficiency of evidence comes to us only after the State has won at trial. Since the factfinder has already found in the State's favor, we must consider the evidence in the light most favorable to the State. *State v. Williams*, 299 Kan. 509, 525, 324 P.3d 1078 (2014), *overruled on other grounds by State v. Dunn*, 304 Kan. 773, 375 P.3d 332 (2016). We then determine whether a rational factfinder could have found that the State proved beyond a reasonable doubt that Torres committed the crime of using a communication device in Lyon County to facilitate a drug felony. 299 Kan. at 525. In doing so, we do not reweigh the evidence or determine the credibility of witnesses. 299 Kan. at 525.

The State must prosecute a crime in the proper venue, which is the county in which the crime was committed. K.S.A. 22-2602. To determine whether the State prosecuted a crime in the proper venue, we ask which act or acts constituted the crime and then determine where those acts took place. *State v. Castleberry*, 301 Kan. 170, 176, 339 P.3d 795 (2014). When determining which acts constitute the crime, we must interpret criminal statutes, and in doing so, we have unlimited review and owe no deference to the district court's interpretation. 301 Kan. at 175.

The Kansas Legislature has defined the illegal use of a communication facility as knowingly or intentionally using a communication facility, such as a cell phone, to commit a drug crime. K.S.A. 2015 Supp. 21-5707(a)(1): To "use" a "communication facility" means more than simply having a cell phone or pager—it means actually using that sort of device to facilitate a drug deal. *Castleberry*, 301 Kan. at 177-78 (relying on the broad statutory definition of "communication facility" to include telephones and "all other means of communication"). Venue is obviously proper where the

defendant makes the telephone call; the defendant is acting in that location. In *Castleberry*, the court concluded that venue also would be proper in the county where the other party was located—at least in cases in which the defendant knew where the other party was calling from:

"Venue to prosecute an alleged drug dealer for the crime of unlawful use of a communication facility is proper in the county where a potential drug purchaser initiates a telephone call to the dealer, when the dealer knows the location of the caller and intentionally uses that telephone communication to facilitate the sale of drugs." 301 Kan. 170, Syl. ¶ 1.

So was there was any evidence, viewed in the light most favorable to the State, that Torres used a cell phone to facilitate the drug deal while either he or Barrett was in Lyon County? And if only Barrett was in Lyon County at the time, is there evidence that Torres knew Barrett was in Lyon County at the time the call was made?

At trial, the witnesses discussed several phone calls between Torres and Barrett: the State presented photos of the call history on Barrett's cell phone as of 8:51 p.m. on October 9, 2014, after the drug deal. That call history showed two calls *from* Torres and five calls *to* Torres earlier that day. One call took place around 5:51 p.m.; the other six calls took place between 8:13 and 8:25 p.m.

That first call, to Torres around 5:51 p.m., lines up approximately with Barrett's testimony that he first called Torres at "about 4 or 5 in the afternoon." Torres argues that this call doesn't establish venue because it doesn't show that he was in Lyon County when he received the call or that he knew that Barrett was in Lyon County when he made the call. Torres is probably correct on this point, but there were other phone calls.

The next call, from Torres at 8:13 p.m., seems to be the call during which Torres changed the location of the drug deal to the "Skittles Apartments." Barrett testified about receiving this phone call, and Vortherms testified about Barrett relaying to him the change of location. There wasn't any evidence about where Torres was when he made this call. But it's reasonable to infer that when Torres called to change the location, he knew that *Barrett* was in

Lyon County because he knew that Barrett was at the first location they'd chosen for the drug deal—which was in Lyon County. This call shows that Torres used a communication facility to commit a drug felony and that he knew at least one end of that call occurred in Lyon County.

Barrett's call log shows one more call from Torres and four more to Torres. No one testified about those calls, but they took place around 8:23 and 8:25 p.m. Vortherms took the photos of the call log at 8:51 p.m., once he arrived at the station after the drug deal. It's reasonable to infer that those calls were also related to the drug deal, since they took place around the same time—and no one disputes that the drug deal itself took place in Lyon County. From all of this evidence, it was reasonable for the jury to conclude that Torres used a communication facility to commit a drug felony while Torres knew that at least one of the parties was located in Lyon County. That satisfies the venue requirement as it was set out in *Castleberry*.

We do wish to add a brief note to ask whether the court in *Castleberry* really intended to create a requirement that the defendant know that one of the parties is in a particular county to be able to prosecute the crime there. Normally, there is no scienter, or knowledge, requirement related to venue. Our venue statute, K.S.A. 22-2602, simply requires that the crime be prosecuted "in the county where the crime was committed." If a defendant commits a crime in a rural area near a county line, we don't require that the State prove the defendant knew he or she was in a particular county.

Here, the underlying crime is the use of a communication facility. It's true that the *use* of the communication facility itself must be knowing or intentional: "It shall be unlawful for any person to knowingly or intentionally use any communication facility [to commit certain felonies]." K.S.A. 2015 Supp. 21-5707(a)(1). But the knowledge requirement there relates to the *use* of the communication facility, not the location of that use. And again, the venue statute has no requirement that the defendant know what county the crime was committed in.

The analysis the court provided in *Castleberry* on the venue

issue centered on a series of federal cases concerning a similar federal statute on the "use" of a communication facility in committing certain felonies, 21 U.S.C. § 843(b) (2012). The federal cases cited in *Castleberry* all held that the "use" occurs at both ends of the telephone connection, and none of the cases established any requirement for venue purposes that the defendant knew that one of the callers was located in the venue where the trial later took place. See *United States v. Acosta-Gallardo*, 656 F.3d 1109, 1120 (10th Cir. 2011); *United States v. Arias-Villanueva*, 998 F.2d 1491, 1509 (9th Cir. 1993), *overruled on other grounds by United States v. Jiminez-Ortega*, 472 F.3d 1102 (9th Cir. 2007); *Andrews v. United States*, 817 F.2d 1277, 1279 (7th Cir. 1987); *United States v. Rodgers*, 575 F. Supp. 246, 247 (N.D. Ill. 1983). Although this was not noted in *Castleberry*, one of the cases *did* raise the question of whether there might be a knowledge requirement, but in that case, *Andrews*, the Seventh Circuit reserved the issue for a later day. 817 F.2d at 1280 n.2.

After reviewing these federal cases holding that the use of a communication facility takes place on both ends of the connection, the *Castleberry* court then concluded that venue was proper in the county in which the drug purchaser had called the out-of-county dealer "when the dealer knows the location of the caller and intentionally uses that telephone communication to facilitate the sale of drugs." 301 Kan. at 179. We have followed the *Castleberry* court's ruling on this point: venue was clearly proper in Torres' case because he did know that Barrett was in Lyon County when at least one of the calls related to the drug sale was made. But we question whether there really should be a knowledge requirement to establish venue. This could be a significant question in many cases, as it's often the case that telephone transactions take place without each caller knowing where the other one is.

Federal courts have generally held knowledge of the caller's location irrelevant to venue unless the government has somehow acted in a way to manufacture venue in a particular location. See *Andrews*, 817 F.2d at 1279 (citing *Rodgers*, 575 F. Supp. 246) (noting, based on *Rodgers*, that government could not create jurisdiction in the U.S. by having its drug agent call the defendant in the

Bahamas). Perhaps our Supreme Court's statement of its holding in *Castleberry* that tied venue to the defendant's knowledge of a caller's location was simply a way of deferring to a later date whether there is a knowledge requirement, as the Seventh Circuit did in *Andrews*, when the case then before the court did not squarely present the question of whether venue would be proper without that knowledge. Although we suggest there should not be a knowledge requirement related to venue, we of course leave the resolution of that question to our Supreme Court; we have followed the *Castleberry* holding here. In this case, as in *Castleberry*, the defendant knew that one of the callers was located in the county where the charge was brought and tried.

Since neither of Torres' arguments succeed, we affirm the district court's judgment.