NOT DESIGNATED FOR PUBLICATION

No. 118,264

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CODY A. RIECHERS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Clay District Court; JOHN F. BOSCH, judge. Opinion filed July 13, 2018. Affirmed.

*John W. Thurston*, of Addair Thurston, Chtd., of Manhattan, for appellant.

*Richard E. James*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., POWELL and GARDNER, JJ.

PER CURIAM: Cody A. Riechers appeals his convictions of driving under the influence (DUI) of alcohol, third offense, and driving without headlights following a bench trial on stipulated facts. Riechers contends the district court erred by concluding probable cause existed to justify his arrest for DUI and by admitting the results of his breathalyzer test. We disagree and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On January 22, 2016, Riechers came to the dispatch window at the Clay County Law Enforcement Center just before 4 a.m. and spoke with the dispatcher, Officer Keith

1

Myers, asking if law enforcement were looking for him. Myers noted that Riechers appeared intoxicated as he was making nonsensical statements, he smelled heavily of alcohol, and he was leaning against the counter. Myers called the on-duty police officer, Officer Billy Smith, and reported that there was a possible intoxicated person at the dispatch window. Myers relayed to Smith that he believed Riechers had a black truck. Riechers left the law enforcement center before Smith arrived.

As Smith approached the law enforcement center, he saw a black truck leaving the center without its headlights illuminated. Smith turned around and followed the truck with the intention of stopping it. Prior to the traffic stop, the truck made two turns and stopped at one red light, but other than the failure to turn on the headlights, Smith saw no other traffic violations. After stopping the truck, Smith made contact with the driver, who was Riechers. Smith told Riechers the reason for the stop, but Riechers said his headlights were on. Smith noted that Riechers' eyes were bloodshot and watery, he was rocking back and forth, and he smelled of alcohol. After Smith told Riechers that he could smell alcohol on his person, Riechers reported that he had consumed one beer.

Riechers was asked to perform a preliminary breath test; at first he agreed but quickly changed his mind and refused. Riechers was then asked to do field sobriety tests; again, he initially agreed to perform the field sobriety tests but changed his mind and refused the tests. After Riechers refused the field sobriety tests, Smith arrested him and transported him to the law enforcement center.

At the law enforcement center, Smith read Riechers the implied consent advisory from a DC-70 form, which at the time included a notice that Riechers could be charged with a separate crime for refusing to submit to blood alcohol content (BAC) testing. When asked if he would do a breath test, Riechers said he wanted a blood test. Smith told Riechers multiple times that he could submit to either a blood test or a breath test but it would take about a month to get the results of a blood test. Riechers went back and forth

2

several times about whether he wanted a blood or breath test until Smith finally told him that he needed to make up his mind. Ultimately, Riechers chose to take a breath alcohol test. Riechers' breath test results revealed that his BAC was .235, above the legal limit.

After being told the results of the breath test, Riechers asked if there was anything else he could do and asked, "[W]hat about a blood test?" Smith responded that in his experience blood test results were higher than breath test results. After this explanation, Riechers did not mention the blood testing to Smith again. Riechers was charged with a third-offense DUI and operating a motor vehicle without headlights during the hours of darkness.

Before trial, Riechers filed a motion to suppress all the evidence obtained after his arrest, contending there was not probable cause for his arrest. Riechers filed two additional motions to suppress the evidence of his breath test results. In one motion, Riechers argued the breath test results should be suppressed because of the coercive nature of the implied consent advisories. The other motion alleged that Smith had failed to allow Riechers to take a blood test after the breath test was completed.

At the suppression hearing, Myers testified about his encounter with Riechers. Myers stated that prior to arriving at the dispatch window, Riechers had called the dispatch office at least three times and asked if they were looking for him. According to Myers, Riechers' statements during the phone calls did not make sense. Myers also testified that he noticed an odor of alcohol as Riechers spoke at the dispatch window and observed:

> "He was very talkative, couldn't stay on point as far as what he was trying to communicate to me. He had red eyes, slurred speech on occasion, but tended to jump from one subject to another without actually finishing the conversation.
> . . . .

3

"[H]e continued to, again, tell me the same story multiple times without completing it. Once he was finished or at least satisfied talking to me, he turned around and left."

Smith next testified that as he approached the law enforcement center in response to the call from Myers, he saw a black truck leaving the center without its headlights illuminated. After following the black truck, Smith initiated a traffic stop because the headlights were not on. Riechers exited his vehicle as Smith pulled in behind him. Riechers initially told Smith that his headlights were on but was convinced otherwise after Smith suggested that video would show his headlights were not illuminated.

Smith testified that he "could smell an odor of alcoholic beverage" while talking to Riechers. Smith said that Riechers "appeared to be having a little trouble standing up straight, standing still. . . . He had bloodshot, watery eyes, too, with the smell of alcohol." Riechers also made some nonsensical statements to Smith and had trouble finding his lighter that turned out to be in his pocket. Riechers at first denied consuming alcohol but later said he had one beer before he left home.

Smith asked Riechers if he would perform a preliminary breath test and field sobriety tests, which Riechers ultimately refused. However, based on his observations during the traffic stop and on Myers' report, Smith placed Riechers under arrest for suspicion of DUI.

After hearing the evidence, the district court denied the suppression motions. The court determined:  (1) The breath test results were admissible under the good-faith exception to the exclusionary rule; (2) there was probable cause for Smith to arrest Riechers for DUI; and (3) there was no denial of Riechers' statutory right to a blood test.

4

On May 18, 2017, a bench trial was held on stipulated facts. During the trial, Riechers maintained a continuing objection to the denial of his suppression motions. After reviewing the stipulated facts, the district court found Riechers guilty of felony DUI, third-offense, and operating a vehicle without headlights.

Riechers timely appeals.

I.     DID THE DISTRICT COURT ERR IN FINDING PROBABLE CAUSE EXISTED TO ARREST RIECHERS?

Riechers first contends the district court erred when it denied his motion to suppress the evidence obtained after his arrest, arguing that Smith lacked probable cause to arrest him for DUI.

When reviewing a district court's denial of a motion to suppress, we use a bifurcated standard. The district court's factual findings are reviewed to determine whether they are supported by substantial competent evidence, and the legal conclusions drawn from those findings are reviewed de novo. *State v. Hachmeister*, 306 Kan. 630, 637, 395 P.3d 833 (2017). When the material facts to a district court's decision on a motion to suppress evidence are not in dispute, the question of whether to suppress evidence is a question of law over which an appellate court has unlimited review. *State v. Cleverly*, 305 Kan. 598, 604, 385 P.3d 512 (2016).

"To be lawful, a warrantless arrest must be supported by probable cause." *Sloop v. Kansas Dept. of Revenue*, 296 Kan. 13, 20, 290 P.3d 555 (2012).

> "'Probable cause is the reasonable belief that a specific crime has been or is being committed and that the defendant committed the crime. Existence of probable cause must be determined by consideration of the information and fair inferences therefrom, known

to the officer at the time of the arrest. Probable cause is determined by evaluating the totality of the circumstances. As in other totality of the circumstances tests, there is no rigid application of factors and courts should not merely count the facts or factors that support one side of the determination or the other.' [Citations omitted.]" 296 Kan. at 20.

The district court determined the following facts supported a finding of probable cause:

- The time of day the arrest occurred—4 a.m.
- The encounter with the dispatcher was reported to Smith.
- Riechers was driving without his headlights illuminated.
- Riechers did not realize that he was driving without his headlights illuminated.
- Smith noticed that Riechers smelled of alcohol and his eyes were bloodshot and watery.
- While being questioned, Riechers swayed, rocked on his heels, and lacked balance.
- Riechers was inconsistent in his answers about whether he had been drinking and ultimately admitted to having a beer.
- Riechers refused to take a preliminary breath test or field sobriety tests.

Riechers cites *City of Hutchinson v. Davenport*, 30 Kan. App. 2d 1097, 54 P.3d 532 (2002), to support his position that Smith lacked probable cause to arrest him for DUI. In that case, Davenport went to a police station, and an officer noticed that his eyes were red and his breath smelled of alcohol. When the officer told Davenport not to drive, Davenport responded that he was on foot. The officer then watched Davenport leave the station, get into a truck, and drive away. The officer relayed his observations to a second officer, who stopped Davenport and arrested him for DUI. Neither officer observed Davenport stumble or commit any traffic violations.

6

The panel in *Davenport* upheld the district court's suppression of evidence, concluding that the odor of alcohol on the defendant's breath and the fact that Davenport reported that he was walking did not provide reasonable suspicion to support a stop. 30 Kan. App. 2d at 1101. The panel determined there were no articulable facts that created a suspicion that Davenport was driving while under the influence or was involved in any other criminal activity. 30 Kan. App. 2d at 1101.

Riechers suggests that, given the arresting officer in *Davenport* lacked reasonable suspicion, Smith did not have probable cause to arrest him for DUI. The facts in *Davenport*, however, differ significantly from the facts in this case. Specifically, Smith had more evidence of Riechers' intoxication and driving impairment at the time of arrest.

A. *Report from Myers*

Smith was responding to a call from Myers, who reported that Riechers was possibly intoxicated and driving a black truck. Myers noted that Riechers had a strong odor of alcohol, red eyes, was leaning against the counter, and at times slurred his speech. Myers explained that Riechers made nonsensical and repetitive statements, often jumping from point to point without finishing the conversation.

Probable cause can be based solely on information from a reliable, credible informant so long as the informant's statements are reasonably corroborated by matters within the officer's knowledge. *State v. Keenan*, 304 Kan. 986, 995, 377 P.3d 439 (2016). In *Keenan*, officers saw that Keenan was driving the vehicle described by the informant, he arrived at his home when expected, his son was with him, he smelled of alcohol, and he stumbled while carrying his son. The Kansas Supreme Court determined that despite not observing any traffic violations, officers had probable cause to arrest Keenan for DUI because the officers' observations corroborated an identified informant's tip about Keenan's condition and behavior. 304 Kan. at 995.

As in *Keenan*, the report from Myers was largely corroborated by Smith's observations after Riechers was pulled over. Riechers was driving a black truck near the law enforcement center as noted by Myers. Smith also noticed that Riechers smelled of alcohol, had bloodshot and watery eyes, had trouble with his balance, and was making nonsensical statements.

## B.  *Driving Without Headlights Illuminated*

Unlike in *Davenport*, Smith witnessed Riechers commit a traffic violation by failing to turn on his headlights. Not only did this give Smith grounds to pull Riechers over, but also factors into probable cause to arrest for DUI. "Obviously, evidence of unsafe driving can suggest intoxication." *City of Wichita v. Molitor*, 301 Kan. 251, 268, 341 P.3d 1275 (2015). "[T]he act of driving at night without headlights is suggestive of alcohol consumption. It shows a diminished lack of awareness and failure to respond to the driving conditions." *Young v. Kansas Dept. of Revenue*, No. 105,783, 2012 WL 1450445, at *4 (Kan. App. 2012) (unpublished opinion).

## C.  *Smith's Observations at the Traffic Stop*

During the traffic stop, Smith saw evidence suggesting that Riechers was impaired by alcohol. Similar to the observing officer in *Davenport*, Smith noticed that Riechers smelled of alcohol and had red, watery eyes. But, unlike the officer in *Davenport*, Smith also detected indications that Riechers was too intoxicated to operate a vehicle safely.

Smith noted that Riechers made nonsensical statements, changed his answer on whether he had consumed alcohol, and had difficulty finding a lighter that turned out to be in his pocket. Perhaps most telling, Smith noticed that Riechers was having trouble with his balance and coordination and noted that Riechers "appeared to be having a little

trouble standing up straight, standing still." Smith explained that Riechers was rocking back and forth on his heels and "kept having to wobble back a little bit and have to step back to kind of catch himself."

D.    *Refusal of Preliminary Breath Test and Field Sobriety Tests*

After initially agreeing to perform field sobriety tests and a preliminary breath test, Riechers refused to perform any of the tests. The refusal to perform field sobriety testing can be considered in the totality of the circumstances analysis when determining if an officer had probable cause to arrest a suspect for DUI. *State v. Shirack*, No. 106,391, 2012 WL 603303, at *8 (Kan. App. 2012) (unpublished opinion). Based on the totality of the circumstances, we agree with the district court's conclusion that Smith had probable cause to arrest Riechers for DUI, and it did not err by denying Riechers' motion to suppress for lack of probable cause.

II.    DID THE DISTRICT COURT ERR BY DENYING RIECHERS' MOTION TO SUPPRESS HIS BREATH TEST RESULTS?

Riechers next challenges the district court's denial of his motion to suppress the results of his breath test. Riechers contends his consent to testing was impermissibly coerced because he was advised that his refusal could subject him to the criminal penalties imposed in K.S.A. 2015 Supp. 8-1025, a statute the Kansas Supreme Court has subsequently held to be unconstitutional. As the material facts are not in dispute, the suppression of evidence becomes a question of law subject to unlimited review. See *State v. Stevenson*, 299 Kan. 53, 57, 321 P.3d 754 (2014).

The Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution Bill of Rights protects citizens from unreasonable searches and seizures. All warrantless searches are per se unconstitutional, subject only to a few specific and well-

9

established exceptions. See *State v. Jones*, 279 Kan. 71, 76, 106 P.3d 1 (2005). A breath test conducted by police constitutes a search under the Fourth Amendment. 279 Kan. at 76. As a result, subjecting a person to a breath alcohol test without a warrant is unconstitutional unless the search falls within a recognized exception to the warrant requirement. Pertinent to this appeal, two exceptions to the warrant requirement are relevant: (1) consent and (2) a search incident to a lawful arrest. *State v. Kraemer*, 52 Kan. App. 2d 686, 695, 371 P.3d 954 (2016), *rev. denied* 306 Kan. 1325 (2017).

At the time of Riechers' arrest, Kansas law provided that a driver's consent to the testing of his or her blood, breath, urine, or other bodily substances for the presence of alcohol was implied by statute. K.S.A. 2015 Supp. 8-1001(a). Along with this law, K.S.A. 2015 Supp. 8-1025 deemed it a crime for a person to withdraw that implied consent by refusing an alcohol test if that person had a prior refusal or DUI conviction.

After arresting Riechers, Smith advised him that pursuant to K.S.A. 2015 Supp. 8-1001(k), if Riechers refused to submit to a breath test and had a prior refusal or conviction, he could be charged with an additional crime based on that refusal. Riechers submitted to a breath test following this advisory. The results of the breath test revealed that Riechers' BAC was above the legal limit to operate a vehicle.

After Riechers' arrest, the Kansas Supreme Court found the statute criminalizing the refusal to submit to a breath test to be unconstitutional. *State v. Ryce*, 303 Kan. 899, 963, 368 P.3d 342 (2016) (*Ryce I*), *aff'd on reh'g* 306 Kan. 682, 396 P.3d 711 (2017) (*Ryce II*). On the same day, our Supreme Court also held that because the State may not constitutionally impose criminal penalties when a driver refuses to consent to submit to a breath test, any consent premised on the inaccurate information in the advisory is unduly coercive and, thus, in violation of a driver's rights under the Fourth Amendment. *State v. Nece*, 303 Kan. 888, 889, 367 P.3d 1260 (2016) (*Nece I*), *aff'd on reh'g* 306 Kan. 679, 396 P.3d 709 (2017) (*Nece II*).

Based on these rulings, Riechers' consent was not voluntary and was obtained in violation of his Fourth Amendment rights. The State concedes this conclusion but argues the test results should not be suppressed because (1) the breath test was administered as a search incident to Riechers' arrest for DUI and, alternatively, (2) Smith acted in good-faith reliance on K.S.A. 2015 Supp. 8-1025. We agree.

This matter presents the same controlling issues this court addressed in *State v. Perkins*, 55 Kan. App. 2d 372, 415 P.3d 460, *rev. granted* 308 Kan. ___ (June 27, 2018). In *Perkins*, a panel of this court determined that a warrantless breath test obtained after the defendant was advised of the criminal penalties imposed in K.S.A. 2015 Supp. 8-1025 was a permissible search incident to arrest and was admissible under the good-faith exception to the exclusionary rule. 55 Kan. App. 2d at 382-83. We find the reasoning in *Perkins* persuasive.

With respect to the search-incident-to-arrest exception, "some warrant exception . . . might sometimes justify the State demanding a DUI suspect submit to testing, irrespective of any implied consent provided by 8-1001." *Ryce I*, 303 Kan. at 918. "When an officer makes a lawful arrest, he or she can search the arrestee and the area within the arrestee's immediate control without getting a warrant—this is called a search incident to arrest." *State v. Torres*, 53 Kan. App. 2d 258, 263, 386 P.3d 532 (2016), *rev. granted* 306 Kan. 1330 (2017). The search-incident-to-arrest exception to the warrant requirement is strictly categorical and does not depend on a case-by-case analysis of the threat to officer safety or of evidence loss, such as the natural dissipation of alcohol. *Birchfield v. North Dakota*, 579 U.S. ___, 136 S. Ct. 2160, 2183, 195 L. Ed. 2d 560 (2016).

In *Birchfield*, the United States Supreme Court held that "the Fourth Amendment permits warrantless breath tests incident to arrests for drunk driving." 136 S. Ct. at 2184. Acknowledging this ruling, the Kansas Supreme Court recognized that "the search-incident-to-lawful-arrest exception is a categorical exception to the warrant requirement

11

permitting an officer to demand a breath test from a person arrested for a DUI violation." *State v. Ryce*, 306 Kan. 682, 690-91, 396 P.3d 711 (2017) (*Ryce II*).

Riechers was arrested under suspicion of DUI before Smith administered the breath test. Upon arrest, Riechers was transported to the law enforcement center for testing. Although the precise time between the arrest and the breath test was not mentioned, the parties stipulated that the breath test was conducted within three hours of Riechers operating a vehicle. It did not matter that Riechers' consent for the breath test was coerced. "For the results to be admissible, the State need only prove the applicability of *one* of the exceptions to the search warrant requirement." *Perkins*, 55 Kan. App. 2d at 380. Based on the rulings in *Birchfield* and *Ryce II*, Smith was permitted to conduct the breath test as a lawful search incident to arrest.

Even if no exception to the search warrant requirement applied, the breath test results were admissible because the officer, in good faith, acted in reliance on the implied consent statute in effect before the Kansas Supreme Court ruled it unconstitutional.

Generally, evidence obtained in violation of a person's Fourth Amendment rights may not be used at trial—this is known as the exclusionary rule. *State v. Pettay*, 299 Kan. 763, 768-69, 326 P.3d 1039 (2014). Because the exclusionary rule is a judicially created remedy, it not absolute; there are exceptions to its application, including the good-faith exception. 299 Kan. at 768-69. The good-faith exception to the exclusionary rule applies to "evidence obtained by police acting in objectively reasonable reliance upon a statute that was subsequently found to violate the Fourth Amendment." *State v. Daniel*, 291 Kan. 490, 498, 242 P.3d 1186 (2010), *cert. denied* 563 U.S. 945 (2011). An officer's reliance on a statute is objectively reasonable when the statute was valid at the time of the officer's action unless (1) "the legislature wholly abandoned its responsibility to enact constitutional laws" or (2) the statute's "provisions are such that a reasonable officer

should have known that the statute was unconstitutional." 291 Kan. at 500 (quoting *Illinois v. Krull*, 480 U.S. 340, 355, 107 S. Ct. 1160, 94 L. Ed. 2d 364 [1987]).

This court has repeatedly held that BAC test results obtained through the advisory required under K.S.A. 2015 Supp. 8-1001(k), prior to our Supreme Court's decisions in *Ryce I* and *Nece I*, are admissible under the good-faith exception. See *Perkins*, 55 Kan. App. 2d at 382-83; *State v. Schmidt*, 53 Kan. App. 2d 225, 237, 385 P.3d 936 (2016), *rev. denied* 306 Kan. 1329 (2017); *Kraemer*, 52 Kan. App. 2d at 698-99. We see no reason to depart from these holdings.

Smith acted in objectively reasonable reliance on K.S.A. 2015 Supp. 8-1025 and the implied consent advisories in K.S.A. 2015 Supp. 8-1001(k) when he obtained Riechers' breath test results. At the time of Riechers' arrest, Smith was required by law to advise Riechers that he could face criminal penalties if he refused to consent to blood alcohol testing. We see no reason why Smith should have known that the implied consent advisories would be found unconstitutionally coercive after Riechers' arrest when our Supreme Court had consistently upheld the constitutionality of warrantless blood alcohol tests. See *State v. Johnson*, 297 Kan. 210, 222-23, 301 P.3d 287 (2013); *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, 635, 176 P.3d 938 (2008); *Furthmyer v. Kansas Dept. of Revenue*, 256 Kan. 825, 835, 888 P.2d 832 (1995); *State v. Garner*, 227 Kan. 566, 571, 608 P.2d 1321 (1980).

Likewise, there is no indication that the Legislature wholly abandoned its duty to enact constitutional laws when our Supreme Court previously held: "[C]ompulsory testing for alcohol or drugs through drivers' implied, even coerced, consent does not violate the Constitution." *Martin*, 285 Kan. at 635. Additionally, other states had similar statutes and continued to uphold them. See *Ryce I*, 303 Kan. at 928-29 (citing cases where courts upheld nonconsensual searches under implied consent statute).

The breath test was a constitutionally proper warrantless search incident to arrest. Alternatively, Smith relied in good faith on K.S.A. 2015 Supp. 8-1025 before it was declared unconstitutional to inform Riechers about the legal consequences of declining to take the test. The district court did not err by denying Riechers' motion to suppress the breath test results because of the coercive nature of the implied consent advisories.

III.    DID SMITH VIOLATE RIECHERS' RIGHT TO ADDITIONAL BAC TESTING?

Riechers next contends the district court erred by denying his motion to suppress his breath test results because he was not afforded an opportunity to get an additional test. Riechers claims the district court was wrong to conclude that he did not request an additional test.

Both parties agree that the material facts are uncontroverted and resolving this issue hinges on our interpretation of the implied consent law. Interpretation of a statute is a question of law over which we have unlimited review. *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015).

A driver who submits to a blood alcohol test may secure additional testing. K.S.A. 2015 Supp. 8-1001(k)(9). Under K.S.A. 8-1004, "the person tested shall have a reasonable opportunity to have an additional test by a physician of the person's own choosing. In case the officer refuses to permit such additional testing, the testing administered . . . shall not be competent in evidence." "The purpose expressed in K.S.A. 8-1004 is to allow an accused an opportunity to secure independent testing in order to rebut the results of police testing, which may be used by the State upon trial." *State v. Chastain*, 265 Kan. 16, 20, 960 P.2d 756 (1998).

Riechers' argument focuses on stipulated facts 11 through 17 presented to the district court during his bench trial:

14

"11. At the law enforcement center, [Riechers] was read the implied consent advisory and when asked if he would do a breath test, he told the officer multiple times he wanted a blood test.

"12. The officer told [Riechers] multiple times that he could do either a blood test or a breath test and also told him that if a blood test is done, it takes 'about a month' to get the results.

"13. [Riechers] went back and forth with the officer several times about whether he wanted a blood or breath test until the officer finally told him he needed to make up his mind.

"14. [Riechers] chose the breath test . . . .

"15. The intoxilizer indicated that [Riechers'] blood alcohol content was .235 . . . .

"16. When told the results of the test, [Riechers] asked if there was anything else he could do and then said 'what about a blood test?'

"17. The officer replied that in his experience, blood tests results were higher than breath test results; [Riechers] never mentioned the blood test again."

Based on these stipulated facts, Riechers claims that he requested an additional blood test. Relying on these same stipulated facts, the State counters that Riechers never asked for such a test.

At the suppression hearing, the district court specifically found that Riechers did not request an additional blood test before the breath test was administered. The district court determined that Riechers was advised of his right to additional testing and, prior to the breath test, it appeared the entire discussion was whether Riechers wanted to take a blood or breath test. The district court concluded:

15

"[The] defendant chose a breath test, and the Court finds that there was never a request to take a blood test, have a blood test drawn, prior to the actual testing, but nothing more than a discussion of whether the defendant should take a breath test or blood test."

Turning to the statements made after the breath test, the district judge noted:

"[B]ased on the facts that I'm presented with, I don't see that the defendant requested [an additional test.] They discussed it. The officer probably shouldn't have given his opinion but he was being asked by the defendant what else he can do, what about a blood test, and he didn't ask for it, and the officer gave him his blunt—his opinion, that usually they're higher."

The district court suggested that there was an affirmative duty on the defendant to request an additional test, as opposed to just discussing the test. As there was not an obvious request for additional testing, the district court found no denial of Riechers' statutory right to additional testing.

An officer may not unreasonably interfere with a DUI suspect's reasonable attempts to secure additional testing. *State v. George*, 12 Kan. App. 2d 649, 655, 754 P.2d 460 (1988). Moreover, the State's test results must be suppressed when the suspect has made a request for additional testing and an officer refuses to permit such additional testing. See *City of Dodge City v. Ibarra*, 35 Kan. App. 2d 643, 648, 133 P.3d 159 (2006); *Mitchell v. Kansas Dept. of Revenue*, 32 Kan. App. 2d 298, 304, 81 P.3d 1258 (2004). This court has determined that a DUI suspect's invocation of his or her statutory right to additional testing must be unambiguous and unequivocal. *State v. Eichem*, No. 91,903, 2005 WL 2949404, at *6 (Kan. App. 2005) (unpublished opinion).

In *Eichem*, an officer arrested the defendant for DUI. According to the officer, Eichem stated he would prefer a blood test but was informed that only a breath test was being offered, which Eichem then completed. At the suppression hearing, Eichem

16

testified that he requested a blood test because he did not trust the breath test machines. The *Eichem* panel held that, even in the light most favorable to the defendant, the officer did not refuse to permit additional testing. 2005 WL 2949404, at \*6. The panel found "[a]t most, the defendant made an ambiguous statement concerning his desire to obtain a blood test, which the deputy was under no obligation to clarify." 2005 WL 2949404, at \*6.

Here, the facts support the district court's conclusion that Riechers failed to clearly request an additional blood test. As the district court found, Riechers' statements prior to the breath test concerning a blood test related to whether he wanted to perform a breath test or blood test for Smith; the statements did not relate to an additional, independent test. Further, like Eichem's statements, Riechers' questions after the breath test were not an unambiguous and unequivocal request for additional testing. After Smith responded to Riechers' question about a blood test, Riechers never conveyed a desire to pursue additional testing.

Even if Riechers' statements could be construed as a request for additional testing, Smith did not unreasonably interfere with Riechers' attempts to secure additional testing when he suggested that blood tests results would likely be higher than his breath test results.

The Kansas Supreme Court addressed a similar situation in *Chastain*, 265 Kan. at 21-22, where the defendant moved to suppress the results of his breath test because the arresting officer had told him an additional blood test would record a higher blood alcohol level. The court rejected the defendant's argument, holding: "As a matter of law, the statement . . . to the defendant that a blood test would show higher, without any further evidence of unreasonable interference or coercion, does not establish the defendant was deprived of his right for further testing under the provisions of K.S.A. 8-1004." 265 Kan. at 22.

Here, Smith's statement that a blood test would show a higher blood alcohol level than Riechers' breath test did not deprive Riechers of his right to additional testing. There is no further evidence that Smith improperly pressured Riechers to forego additional testing. Thus, even if Riechers had requested an additional blood test, Smith did not unreasonably interfere with his right to secure additional testing. The district court did not err by refusing to suppress the results of Riechers' breath test.

Affirmed.