NOT DESIGNATED FOR PUBLICATION

No. 117,841

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SCHAAN MICHAEL DONALDSON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; JEAN M. SCHMIDT, judge. Opinion filed February 22, 2019. Affirmed.

*Kristen B. Patty*, of Wichita, for appellant.

*Rachel L. Pickering*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., LEBEN, J., and KEVIN BERENS, District Judge, assigned.

PER CURIAM: Schaan Michael Donaldson appeals his conviction for violating a protective order. He argues that the State admitted insufficient evidence to support his conviction. But the protective order provided that Donaldson not "come on or around the premises" where Amy Anderson lived, and the district court found—supported by evidence—that Donaldson had driven in front of her home and taken a photo. Based on that and other evidence, the evidence was sufficient for a rational fact-finder to find Donaldson guilty beyond a reasonable doubt. We therefore affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Anderson obtained a temporary protection from stalking order against Donaldson. Topeka police served Donaldson with the order that same day. The order included provisions precluding contact, harassment, and being around Anderson's places of work or residence:

> "The defendant shall not follow, harass, telephone, contact or otherwise communicate with the protected person.
>
> . . . .
>
> "The defendant shall not contact the protected person, either directly or indirectly.
>
> "The defendant shall not enter or come on or around the premises, the residence or workplace where the protected person resides, stays or works."

The next day, Anderson and several others were on Anderson's driveway working on a car. According to Anderson, while she was on her driveway, Donaldson drove to her home, stopped, took a picture, and said Anderson and the others "were going to pay" for what they had done. In response, Anderson took a picture of Donaldson leaving and called 911.

Later that day, Topeka Police Sergeant Scott Scurlock arrested Donaldson for violating the protective order. Donaldson told Sergeant Scurlock that he had driven by Anderson's home and taken a picture; he asked Scurlock if that violated the protective order. Scurlock told Donaldson that he did not know the answer.

The State charged Donaldson with violation of a protective order under K.S.A. 2015 Supp. 21-5924. That statute makes it a class A person misdemeanor for an individual to knowingly violate a protective order.

The case proceeded to a bench trial. To convict Donaldson, the State had to prove beyond a reasonable doubt that Donaldson knowingly violated the protective order.

Anderson, Scurlock, and another police officer, Joe Harrison, were called by the State. The State also admitted a certified copy of the protection from stalking order that was in effect.

Anderson testified that Donaldson drove to her home that morning, stopped, took pictures with his phone, and said that Anderson and the others on her driveway would "pay for what [they] did" before driving away. Anderson testified that Donaldson was alone in his truck.

Scurlock testified that after he arrested Donaldson, Donaldson "said he had driven by there and taken a picture" and asked Sergeant Scurlock "if that was a violation of the order." Scurlock also testified that, though Anderson's home and Donaldson's home were on the same road, Donaldson did not have to drive past Anderson's home to get out of the neighborhood and onto the nearest main road. Scurlock said Donaldson didn't have to pass Anderson's house to leave his neighborhood. According to Scurlock, there was no road construction that day on either the street Anderson and Donaldson lived on or on the nearest main road.

Donaldson testified in his own defense. He agreed that he had been served with the protective order the day before he drove by Anderson's home. He said he drove by her home the next morning because he was driving his son to school after his son missed the bus. He claimed that he had to drive past Anderson's house in order to get out of the neighborhood because a neighbor in between Donaldson's home and the most direct exit from the neighborhood was replacing a section of driveway and that construction blocked his route. Donaldson also said, though, that he "could have waited, probably," in respect to the construction. It's unclear from that testimony whether he meant that the street was

3

blocked off or that there was simply construction equipment temporarily in the way at the exact time he was driving.

Donaldson said that he did not stop his truck, but he did admit taking a photograph. He said that he did so because he was helping police to identify potentially stolen vehicles at Anderson's home. Scurlock confirmed in his testimony that there was a police investigation into potentially stolen vehicles at Anderson's house.

The district court found Donaldson guilty of knowingly violating the protective order. The district court explained that it found Donaldson guilty of violating the last clause of the protective order, that "defendant shall not enter or come on or around the premises, the residence or workplace where the protected person resides, stays or works." The trial judge said, "I think you had a choice of going around and you didn't have to go in front of there." The court further stated that "[t]he taking the picture, it's not clear. And, you know, if this case goes up on appeal, I'd be curious to see how the Court of Appeals handles it, because it is a public road."

Donaldson has appealed his conviction to our court.

ANALYSIS

Donaldson argues that the State's evidence wasn't sufficient to support a conviction. His main contention is that driving by Anderson's house, when they both live on the same street and Donaldson alleged road construction prevented him from going the other direction, cannot violate the protective order. Donaldson argues that enforcing the protective order that way would be too broad.

When a person challenges the sufficiency of the evidence supporting his or her conviction, we review "'the evidence in a light most favorable to the State to determine

4

whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt.' [Citation omitted.]" *State v. Rosa*, 304 Kan. 429, 432-33, 371 P.3d 915 (2016). We do so because the fact-finder—here, the trial judge—found in the State's favor after hearing the evidence. *State v. Torres*, 53 Kan. App. 2d 258, 267, 386 P.3d 532 (2016), *aff'd* 308 Kan. 476, 421 P.3d 733 (2018). We are not the fact-finder, so we must "'not reweigh evidence, resolve evidentiary conflicts, or make determinations regarding witness credibility. [Citations omitted.]'" *State v. Dunn*, 304 Kan. 773, 822, 375 P.3d 332 (2016). The same standard of review applies whether the trial was to a judge, as here, or to a jury. *State v. Frye*, 294 Kan. 364, 374, 277 P.3d 1091 (2012).

The district court specified that it found Donaldson guilty of violating the last clause of the protective order, which prohibited Donaldson from entering or coming on or around Anderson's home. Donaldson's argument on appeal is that because he was merely "passing-by on a public thoroughfare" and blocked by construction, he did not violate this clause. But Donaldson's argument disregards the evidence—and some important factual findings—from the trial.

First, Donaldson admitted that he did not just drive by Anderson's house, he took a picture as well. Second, Anderson testified that Donaldson stopped in front of her house, got out of his truck, took pictures, and told Anderson she would pay for what she did. Third, while it was a disputed fact whether construction prevented Donaldson from leaving his neighborhood unless he drove by Anderson's house, there was evidence to support the trial court's conclusion that Anderson could have gone a different way.

Sergeant Scurlock testified that he was familiar with both the neighborhood and the construction surrounding it. He testified that construction did not block Donaldson from exiting the neighborhood without passing Anderson's house on the day in question. Even Donaldson testified that he "could have waited, probably," for whatever construction he claimed was blocking his path to move. This testimony suggested that

5

perhaps it was not a full-scale construction closure that kept Donaldson from going around, but a briefer inconvenience like a truck backing up.

The district court explicitly credited the testimony that construction did not prevent Donaldson from avoiding Anderson's home. We cannot reweigh evidence or the credibility of witnesses on appeal. Viewing this evidence in the light most favorable to the State, we find sufficient evidence supports Donaldson's conviction for violating the protective order.

We affirm the district court's judgment.