IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 114,269

STATE OF KANSAS,
*Appellee,*

v.

SETH TORRES,
*Appellant*.

SYLLABUS BY THE COURT

1.

The ultimate touchstone of the Fourth Amendment to the United States Constitution is reasonableness. A search undertaken by law enforcement officials to discover evidence of criminal wrongdoing generally requires the obtaining of a judicial warrant. If law enforcement officers do not have a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement.

2.

The State carries the burden to justify a warrantless search.

3.

The Kansas Supreme Court generally does not consider issues not raised in a petition for review or cross-petition.

4.

Under *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009), law enforcement officers can conduct a warrantless search of an automobile incident to

1

arrest in two specific circumstances: when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search (the officer-safety justification) or when it is reasonable to believe evidence relevant to the crime of arrest might be in the vehicle (the evidence-preservation justification). *Gant* also recognizes officers may rely on other exceptions to the warrant requirement to conduct an automobile search.

5.

Under *Gant*'s officer-safety circumstance, law enforcement officers may search the passenger area and any containers in it after an arrest, but only when officers have not yet secured a passenger who remains within reaching distance of the passenger area at the time of the search.

6.

Under *Gant*'s evidence-preservation justification, the circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is reasonable to believe evidence relevant to the crime of arrest might be in the vehicle.

7.

When a criminal defendant challenges the sufficiency of evidence, appellate courts review the evidence in a light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. In making a sufficiency determination, the appellate court does not reweigh evidence, resolve evidentiary conflicts, or make determinations about witness credibility.

8.

K.S.A. 2017 Supp. 21-5707(a)(1) provides that the illegal use of a communication facility means knowingly or intentionally using a communication facility, such as a cell phone, to commit a drug crime.

9.

Use of a communication facility occurs at both ends of a communication—that is, whether an individual initiates or receives the communication.

10.

Venue to prosecute an alleged drug dealer for the crime of unlawful use of a communication facility is proper in the county where a potential drug purchaser initiates a telephone call to the dealer if the dealer knows the location of the caller and intentionally uses the communication to facilitate the sale of drugs.

Review of the judgment of the Court of Appeals in 53 Kan. App. 2d 258, 386 P.3d 532 (2016). Appeal from Lyon District Court; MERLIN G. WHEELER, judge. Opinion filed July 6, 2018. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, argued the cause, and *Susan E. Bandy*, legal intern, was with him on the brief for appellant.

*Carissa E. Brinker*, assistant county attorney, argued the cause, and *Marc Goodman*, county attorney, and *Derek Schmidt*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, J.:  Seth Torres sold methamphetamine to a confidential informant, Justin Barrett, while law enforcement officers observed them. Barrett paid for the

3

methamphetamine with $220 cash provided by law enforcement officers who had recorded each bill's serial number. After the drug deal, Torres briefly entered a nearby apartment before he got into the passenger seat of a car and left. A law enforcement officer followed the car and pulled it over. Another officer formally arrested Torres and searched the car, finding $200 of the recorded money. The State charged Torres, who moved to suppress the evidence seized in the car search. He argued the officer conducted an illegal, warrantless search without probable cause or a reasonable basis to believe the money used in the drug buy would be in the car rather than the apartment he had entered. The district court denied his motion, and a jury convicted him of methamphetamine distribution and illegal use of a communication device to facilitate a drug transaction. Torres appealed, and the Court of Appeals affirmed his convictions. See *State v. Torres*, 53 Kan. App. 2d 258, 271, 386 P.3d 532 (2016).

Before the Court of Appeals, Torres first argued the district court erred in denying his motion to suppress evidence because the search occurred without a warrant and thus violated the Fourth Amendment to the United States Constitution. The Court of Appeals recognized that courts generally view an officer's warrantless search as unconstitutional unless it meets a warrant exception. But the Court of Appeals found the search fell within the automobile and search-incident-to-lawful-arrest exceptions to the warrant requirement. 53 Kan. App. 2d at 263-66. The Court of Appeals rejected a third exception the district court had cited—the plain-view exception. 53 Kan. App. 2d at 266.

Based on our review, we conclude the law enforcement officer conducted a constitutional search under the United States Supreme Court's holding in *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009), relating to the search-incident-to-lawful-arrest exception in a vehicle context. Because we reach that conclusion, we need not determine whether other warrant exceptions apply.

4

Torres also argued before the Court of Appeals that the State had failed to establish venue as required to convict him of illegal use of a communication device to facilitate a drug transaction. The Court of Appeals held sufficient evidence established Torres called Barrett knowing Barrett was in the City of Emporia, which is located in Lyon County, and thus that evidence sufficiently proved venue. 53 Kan. App. 2d at 267-69. We affirm that holding.

FACTS AND PROCEDURAL BACKGROUND

The October 9, 2014 controlled buy between Barrett and Torres was set up after Barrett agreed to cooperate with law enforcement officers in exchange for the officers putting in a good word for him with the Lyon County Attorney, who was prosecuting him on unrelated drug charges. At trial in this case, Emporia police officer Dominick Vortherms, Lyon County sheriff's deputy Heath Samuels, and Barrett testified about the controlled drug buy and the events that followed.

At 5:51 p.m. on the day of the drug deal, Barrett used his cell phone to call Torres on his cell phone. Barrett called from the Emporia Police Department while observed by Vortherms. Once Torres agreed to sell methamphetamine to Barrett a few hours later, officers searched Barrett and his car to be sure Barrett had no drugs or money. They then gave Barrett $220 in cash. Officers had recorded the serial number of each bill. The officers also wired Barrett so they could hear his conversations. Vortherms and Samuels separately followed Barrett from the police station to the house in Emporia where Torres and Barrett had arranged to meet.

Barrett drove to the agreed-upon location. Once there, at 8:13 p.m., Torres telephoned Barrett and told him to drive to an Emporia apartment complex. Barrett did so, and both officers separately followed Barrett to the new location and set up to observe

5

the drug deal and traffic in and out of the complex. Between 8:23 p.m. and 8:25 p.m., Barrett's cell phone logged five calls or texts between Barrett and Torres. Torres began one, and Barrett began the other four.

Samuels established an observation point in the apartment complex from which he could see Barrett. Samuels saw a white car pull into the parking lot of the apartment complex, and Vortherms confirmed to Samuels that Torres was in the white car. Barrett got out of his car and walked over to Torres. Although Samuels could see the two men, he could not tell whether the men shook hands or exchanged drugs and money.

Barrett got into his car and drove away. Vortherms followed Barrett back to the police station where Barrett gave Vortherms a bag containing a crystal substance. Vortherms searched Barrett and his car for drugs and money; Barrett did not have any of the recorded cash or drugs in his car or on his person. At 8:51 p.m., Vortherms took a photo of Barrett's cell phone log. He also field tested the substance in the bag and determined it was methamphetamine. Lab technicians later confirmed the bag contained about 3.3 grams of methamphetamine.

Meanwhile, Samuels stayed at the apartment complex where he watched Torres enter one of the apartments. At some point, Samuels moved his observation point to an unmarked car in the parking lot, and Vortherms updated Samuels about the results of the field test. After a few minutes, Samuels saw Torres leave the apartment and get into the passenger side of a car. Samuels asked another officer to follow and stop the car.

Samuels continued to observe the apartment until another officer arrived to take over. Samuels then drove to the scene of the vehicle stop. When Samuels arrived, officers had secured both Torres and the driver in police cars. Samuels formally arrested Torres and read him his *Miranda* rights. Torres asked to speak with an attorney, and another

6

officer took Torres to jail. Samuels did not have a warrant to search the car, so he asked the driver for permission to do so. The driver refused.

Samuels then looked into the car with a flashlight. He saw cash rolled in a manner similar to the practice of other drug dealers Samuels had encountered as a narcotics officer. The roll of cash was sticking out of an open, black sunglasses case on the front passenger floorboard. Samuels seized the cash, which included $200 of the recorded money Barrett used to buy the drugs.

Before trial, Torres asked the district court to suppress the evidence found in the car. The district court denied his motion and admitted the evidence over Torres' objection at trial. The jury convicted Torres of methamphetamine distribution and unlawful use of a communication device (a cell phone) to commit a drug felony. The district court sentenced Torres to 51 months' imprisonment with 36 months' postrelease supervision for distribution of methamphetamine, concurrent with an 8-month sentence for unlawful use of a communication device.

As we have discussed, Torres appealed. The Court of Appeals affirmed, and this court granted review of the Court of Appeals' decision.

ANALYSIS

Before us, Torres renews the two issues he argued to the Court of Appeals and now points out his disagreements with the Court of Appeals' analysis. We reject his arguments.

I.      *The Court of Appeals correctly upheld the denial of Torres' motion to suppress evidence.*

Torres first argues his motion to suppress evidence was improperly denied. He points out that warrantless searches are presumptively unreasonable. This argument arises because "'the ultimate touchstone of the Fourth Amendment is "reasonableness."'" *Riley v. California*, 573 U.S. ___, ___, 134 S. Ct. 2473, 2482, 189 L. Ed. 2d 430 (2014). And the United States Supreme Court has determined that "'[w]here a search is undertaken by law enforcement officials to discover evidence of criminal wrongdoing, . . . reasonableness generally requires the obtaining of a judicial warrant.'" 134 S. Ct. at 2482. As the Supreme Court has explained: "Such a warrant ensures that the inferences to support a search are 'drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.'" 134 S. Ct. at 2482. If law enforcement officers do not have a warrant, "a search is reasonable only if it falls within a specific exception to the warrant requirement." 134 S. Ct. at 2482. The State carries the burden to justify a warrantless search. See *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967); *State v. Neighbors*, 299 Kan. 234, 239-40, 328 P.3d 1081 (2014).

Here, the district court relied on three exceptions to the warrant requirement: search incident to lawful arrest, probable cause plus exigent circumstances under the automobile exception, and plain view. On appeal from that decision, the Court of Appeals held Samuels had constitutionally conducted the search under the search-incident-to-lawful-arrest and automobile exceptions to the warrant requirement. But the Court of Appeals refused to apply the plain-view exception. See *Torres*, 53 Kan. App. 2d at 263-66. The State did not cross-petition for review from the Court of Appeals' plain-view holding. Because this court generally does not consider issues not raised in a petition for review or cross-petition, we will not consider the plain-view exception. See *State v. Keenan*, 304 Kan. 986, 993, 377 P.3d 439 (2016).

8

In Torres' petition for review, he separately argues against application of the automobile exception and the search-incident-to-lawful-arrest exceptions. As for the automobile exception, he argues Samuels lacked probable cause to believe evidence of the crime could be found in the car because Torres went into the apartment where he could have left the money. He emphasizes that Samuels did not see him carry anything into the car. Torres points out that the Court of Appeals found "equally plausible" the two possibilities of Torres leaving the money behind or taking it with him when he got in the car. 53 Kan. App. 2d at 266. And he suggests having two possibilities in equipoise means neither is probable. He argues the Court of Appeals thus erred in determining the State had established the probable cause requirement of the automobile exception. See *State v. Stevenson*, 299 Kan. 53, 58, 321 P.3d 754 (2014) (stating that the automobile exception to the Fourth Amendment is a subclass of the probable-cause-plus-exigent-circumstances exception under which, "[i]f a vehicle is readily mobile and probable cause exists to believe the vehicle contains contraband or evidence of a crime, the Fourth Amendment does not require a warrant for police to search the vehicle").

Torres also addresses the Court of Appeals' conclusion that the officer lawfully conducted the search and seizure under the search-incident-to-lawful-arrest exception as applied in *Gant*—that is, where law enforcement officers "search a vehicle incident to a recent occupant's arrest." *Gant*, 556 U.S. at 343. Torres again points to the possibility the money could have been left in the apartment. He argues Samuels lacked "evidence to reasonably believe there would be evidence of a crime *within the car*."

We begin our analysis with a general overview of the search-incident-to-lawful-arrest exception to the warrant requirement. Traditionally, under that exception, a law enforcement officer making a lawful arrest can lawfully search the arrestee and the area within the arrestee's immediate control without getting a warrant. The United States

9

Supreme Court has explained this exception serves two purposes: (1) protecting officer safety by allowing a search for weapons an arrestee could reasonably access; and (2) preventing an arrestee from destroying or concealing evidence. See *Chimel v. California*, 395 U.S. 752, 763, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969). Either purpose justifies "a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." 395 U.S. at 763.

In *Gant,* the United States Supreme Court recognized that law enforcement officers can conduct a warrantless search of an automobile incident to arrest in two specific circumstances: "when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search" (the officer-safety justification) or "when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle'" (the evidence-preservation justification). *Gant*, 556 U.S. at 343-44 (quoting *Thornton v. United States*, 541 U.S. 615, 632, 124 S. Ct. 2127, 158 L. Ed. 2d 905 [2004] [Scalia, J., concurring]). *Gant* also noted that officers may conduct automobile searches under other warrant exceptions. 556 U.S. at 346-47.

The officer-safety circumstance recognized in *Gant* does not apply here. Under it, after an arrest, police can search the passenger area and any containers in it, but only when officers have not yet secured a passenger who remains within reaching distance of the passenger area at the time of the search. See *Gant*, 556 U.S. at 343-44. Here, officers had arrested and secured both the driver and Torres. In fact, an officer had transported Torres from the scene, and they were on the way to or were already at the jail. Likewise, the driver could not reach the passenger compartment of the car at the time of the search because officers had secured him in a patrol car.

We therefore turn to the second *Gant* exception: whether the "circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" *Gant*, 556 U.S. at 343 (quoting *Thornton,* 541 U.S. at 632 [Scalia, J., concurring]); see *State v. Carlton*, 297 Kan. 642, 643, 304 P.3d 323 (2013); see also *State v. James*, 301 Kan. 898, 349 P.3d 457 (2015) (interpreting K.S.A. 22-2501 [repealed before Torres' crime, L. 2011, ch. 100, § 22] to allow Kansas law enforcement officers to rely on *Gant* to justify an automobile search incident to arrest). The Supreme Court has explained the two unique circumstances that justified this vehicle-specific rule: "'a reduced expectation of privacy' and 'heightened law enforcement needs' when it comes to motor vehicles." *Riley*, 134 S. Ct. at 2492 (quoting *Thornton*, 541 U.S. at 631 [Scalia, J., concurring]).

The *Gant* Court distinguished this circumstance, which relates only to searches of vehicles, from the automobile exception to the warrant requirement and, as the First Circuit Court of Appeals has stated: "These distinctions make a difference. And, for obvious reasons, it is important to keep them straight." *United States v. Polanco*, 634 F.3d 39, 43 (1st Cir. 2011). Two points of distinction warrant mention, given Torres' arguments. First, the *Gant* exception applies to evidence relevant to the crime of arrest but the automobile exception extends to evidence of other offenses. Second, the automobile exception requires probable cause. *Gant*, 556 U.S. at 347. But the *Gant* exception requires only a reasonable basis. 556 U.S. at 343-44. In *Thornton*, Justice Scalia seemed to justify this distinction because probable cause had existed for the arrest. "The fact of prior lawful arrest distinguishes the arrestee from society at large, and distinguishes a search for evidence of his crime from general rummaging." *Thornton*, 541 U.S. at 630 (Scalia, J., concurring).

11

Here, applying this second circumstance recognized in *Gant*, the Court of Appeals found Samuels' search of the car was a valid search incident to lawful arrest because he had a reasonable basis to believe the car would contain evidence of the crime for which he arrested Torres. See *Torres*, 53 Kan. App. 2d at 264. Torres argues that the Court of Appeals erred in determining Samuels could objectively hold a reasonable belief that evidence of the crime for which he had arrested Torres could be found in the car. But he does not argue the Court of Appeals erred in considering the second *Gant* circumstance. So we also focus solely on whether the State established *Gant*'s reasonable-belief standard. Here, the Court of Appeals noted that Torres might have left the cash in the apartment, but it concluded "that particular inference is no more or less reasonable than the inference that Torres took the cash with him when he got in the car. It was reasonable for Samuels to believe that Torres kept his cash with him and that the cash was therefore in the car." *Torres*, 53 Kan. App. 2d at 264.

In this analysis, the Court of Appeals did not define what the reasonable-basis or reasonable-belief standard means. Nor did it explain how the standard may be met. Instead, it focused on the facts of the case and, in what we will label as a common-sense consideration of the totality of the circumstances, recognized those facts supported a reasonable belief. See *United States v. Reagan*, 713 F. Supp. 2d 724, 728 (E.D. Tenn. 2010) (interpreting the second *Gant* circumstance to apply "when it is reasonable to believe, based upon common sense factors and the totality of the circumstances, that evidence of the offense of the arrest is inside" the vehicle). Likewise, neither Torres nor the State delve into the meaning of *Gant*'s reasonable-basis standard. And, to date, neither has this court.

As the *Reagan* court noted, courts have taken other approaches to the standard. 713 F. Supp. 2d at 729. The spectrum of decisions reveals some uncertainty in the standard—an uncertainty predicted by *Gant*'s concurring and dissenting justices. See

12

*Gant*, 556 U.S. at 354 (Scalia, J., concurring) (the majority standard "does not provide the degree of certainty I think desirable in this field"); 556 U.S. at 356 (Alito, J., dissenting) ("The second part of the new rule . . . is virtually certain to confuse law enforcement officers and judges for some time to come."). Here, the lack of any discussion about the meaning of the reasonable-belief standard by the Court of Appeals or the parties cautions us to not use this decision to take a deep dive into the caselaw of other courts. We might not be able to exercise this caution under different facts and arguments. But neither party objects to the Court of Appeals' common-sense examination of the totality of the circumstances. And *Gant* provides clues—some generic to all cases and some specific to the facts of this case.

Examining the clues, the *Gant* Court chose not to use a probable cause standard and instead labeled the standard as a reasonable basis, or reasonable belief. See *Gant*, 556 U.S. at 343-44, 347. Second, the *Gant* majority, as we have discussed, specifically recognized other doctrines, such as the automobile exception, still applied. 556 U.S. at 347. As suggested by our discussion of *Polanco*, 634 F.3d at 43, this distinction has led many courts to conclude the reasonable-belief standard requires something less than probable cause—at least on the point of whether the evidence may be in the car (as opposed to the justification for the arrest that triggers the *Gant* vehicle exception). See, e.g., *People v. Chamberlain*, 229 P.3d 1054, 1057 (Colo. 2010) (noting the *Gant* Court's use of phrases like "reasonable to believe" and "reasonable basis to believe" "is often used synonymously with probable cause" but concluding "a requirement of probable cause in this context would render the entire second prong of the *Gant* search-incident-to-arrest exception superfluous"; plus, the *Gant* "majority at several points requires only a reasonable belief that evidence 'might' be found"). Third, the majority in *Gant* distinguished between offenses that, by their nature, make it unlikely officers will find evidence of the crime of arrest in a vehicle (such as speeding) and those where "the

13

offense of arrest will supply a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein." 556 U.S. at 344.

To illustrate the second situation of crimes that supply a basis for a search, the Court referenced two cases—*Thornton*, 541 U.S. 615, and *New York v. Belton*, 453 U.S. 454, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981). Both involve arrests for a drug offense, and some courts have viewed the *Gant* Court's reference to those cases as providing a per se test for a search any time officers arrest a drug suspect who exits a car. See, e.g., *Brown v. State*, 24 So. 3d 671, 679 (Fla. Dist. Ct. App. 2009). We stop short of that conclusion today (although we leave it open for future consideration) and instead, like the Court of Appeals, look at the totality of the circumstances of this case compared to one of the cases cited by the *Gant* Court as an example:  *Belton*.

In *Belton,* an officer stopped a vehicle traveling at an excessive rate of speed. In talking to the vehicle's occupants, the officer smelled burnt marijuana and saw on the floor of the vehicle an envelope suspected of containing marijuana. The officer searched the car and found cocaine in a zipped jacket pocket.

Here, although the stop did not occur because of a traffic violation, Samuels had probable cause to arrest Torres for selling methamphetamine to Barrett—a point Torres does not argue against. Once Samuels arrested Torres, Samuels lawfully looked through a window into the car and saw money rolled in a manner consistent with the method used by other drug dealers Samuels had encountered. See *State v. McMillin*, 206 Kan. 3, 8, 476 P.2d 612 (1970) (looking through vehicle windows with a flashlight does not constitute a search, even if it is nighttime and officers can see items only with a flashlight). The nature of Torres' offense—the distribution of methamphetamine—made it likely officers would find evidence of the crime—the monetary proceeds—in Torres' possession, and Samuels' observation of the roll of cash made it reasonable to believe the

14

evidence would be in the car. See *Thornton*, 541 U.S. at 630 (Scalia, J., concurring) (relied on by the *Gant* majority and stating: "There is nothing irrational about broader police authority to search for evidence when and where the perpetrator of a crime is lawfully arrested. . . . Moreover, it is not illogical to assume that evidence of a crime is most likely to be found where the suspect was apprehended.").

Contrary to Torres' arguments, we do not find that reasonable belief evaporated because Torres had entered an apartment and left the apartment without carrying anything. The presence of the cash roll on the car's floor near where Torres had been sitting weakens the inference cash had been left in the apartment. And the fact Samuels did not see Torres carrying anything when he got into the car does not mean Samuels could not reasonably believe the money would be in the car. Torres could easily conceal the amount of money involved—$220—in his wallet, in a sunglasses case on his belt or in a pocket, or elsewhere on his person. He then could easily conceal the money in the car.

In summary, under *Gant*, Samuels validly searched the car as a search incident to a lawful arrest. Given the totality of the circumstances, we conclude Samuels held an objectively reasonable belief that he might find evidence of the crime of arrest in the car. See *Gant*, 556 U.S. at 343-44.

In light of the *Gant* exception, we need not consider whether Torres makes a valid argument about the Court of Appeals' reasoning that equally probable inferences cannot support probable cause sufficient to apply the automobile exception. The State needed to establish only one warrant exception in order for us to hold that the district court did not err in denying Torres' motion to suppress.

15

II.     *Sufficient evidence supports Torres' conviction for unlawful use of a communication device.*

Torres argues the State introduced insufficient evidence to support his conviction for unlawful use of a communication device because the State presented no evidence he used a cell phone in Lyon County or knew Barrett was in Lyon County at the time of the calls. Torres' sufficiency argument relates purely to venue. Venue as challenged by Torres presents "a question of fact to be determined by the jury." See *State v. Hunt*, 285 Kan. 855, 859, 176 P.3d 183 (2008) (discussing venue as both a question of fact for the jury and a question of law when raised as related to a court's jurisdiction).

"'When the sufficiency of the evidence is challenged in a criminal case, this court reviews the evidence in a light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt.' [Citation omitted.]" *State v. Rosa*, 304 Kan. 429, 432-33, 371 P.3d 915 (2016). "'In making a sufficiency determination, the appellate court does not reweigh evidence, resolve evidentiary conflicts, or make determinations regarding witness credibility.' [Citations omitted.]" *State v. Dunn*, 304 Kan. 773, 822, 375 P.3d 332 (2016). An appellate court will reverse a guilty verdict even if the record contains some evidence supporting guilt only in rare cases when the court determines that evidence was so incredulous no reasonable fact-finder could find guilt beyond a reasonable doubt. See *State v. Matlock*, 233 Kan. 1, 5-6, 660 P.2d 945 (1983).

To determine what the State needed to prove, we look to the statute—K.S.A. 2017 Supp. 21-5707(a)(1). It provides that the illegal use of a communication facility means knowingly or intentionally using a communication facility, such as a cell phone, to commit a drug crime. See K.S.A. 2017 Supp. 21-5707(a)(1); see also *State v. Castleberry*, 301 Kan. 170, 177-78, 339 P.3d 795 (2014). In *Castleberry*, we held that

16

"'use' occurs at both ends of the telephone line," and we cited cases establishing the use can arise whether the alleged dealer places or receives the communication. 301 Kan. at 178.

Here, we cannot consider the possibility of Torres placing the call (or sending a text message) because the Court of Appeals ruled the State did not present sufficient evidence of his location. *Torres*, 53 Kan. App. 2d at 268. And the State has not cross-appealed this point. See *Keenan*, 304 Kan. at 993.

We may consider Barrett's location when he called Torres to facilitate the drug deal, however. Discussing the situation in which a drug purchaser makes the call, we held in *Castleberry* that venue "is proper in the county where a potential drug purchaser initiates a telephone call to the dealer when the dealer knows the location of the caller and intentionally uses that telephone communication to facilitate the sale of drugs." 301 Kan. at 179. The Court of Appeals held the State had met that burden by presenting sufficient evidence to infer Torres knew Barrett was in Lyon County when Torres called to change the location of the drug deal from the house to the apartment complex, both of which are in Lyon County. The Court of Appeals determined the jury could reasonably infer Torres knew Barrett had already arrived at the first Lyon County location when he called to change the location. *Torres*, 53 Kan. App. 2d at 268-69.

As noted by the Court of Appeals, the evidence established that Torres made a call to Barrett at 8:13 p.m., and other evidence established (or at least provided the inference) that this call communicated the change in the location of the drug sale. Given the timing, one can infer Torres knew Barrett was at the first location. Torres then met Barrett just a few minutes later in Lyon County at another Emporia location. And Barrett's phone log

17

shows he communicated with Torres four times during those few minutes. Based on the timing of these calls, testimony regarding the route between the two locations, and other evidence about the timing of various events, a reasonable jury could determine that Torres used a communication device to communicate with Barrett to facilitate a drug transaction and knew Barrett was in Lyon County. See *Castleberry*, 301 Kan. 170, Syl. ¶ 1. Torres' sufficiency of the evidence argument fails.

Although the Court of Appeals correctly found there was sufficient evidence to support Torres' conviction, it went on to question this court's decision in *Castleberry* by suggesting a drug dealer who calls a drug purchaser need not know the purchaser's location. See *Torres*, 53 Kan. App. 2d at 269-71. We need not—in fact, we cannot—explore that issue here. We have held the State met its burden under the *Castleberry* test, and any further discussion would merely be an academic curiosity and advisory opinion. But this court has no authority to issue advisory opinions under Article 3 of the Kansas Constitution. See *State ex rel. Morrison v. Sebelius*, 285 Kan. 875, 898, 179 P.3d 366 (2008). We also note that neither party asks us to revisit *Castleberry* despite the Court of Appeals raising the possibility.

In sum, we reject Torres' argument that the State failed to present sufficient evidence of venue.

CONCLUSION

The Court of Appeals correctly upheld the district court's denial of Torres' suppression motion under the warrant-requirement exception of a search incident to lawful arrest in a vehicle context. The Court of Appeals also correctly found the State presented sufficient evidence establishing venue in Lyon County because the evidence

18

strongly supported an inference Torres knew Barrett was in Lyon County when he called to change the location of the drug deal.

We affirm the decisions of the district court and the Court of Appeals.