NOT DESIGNATED FOR PUBLICATION

No. 121,366

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

RUBEN BORDEN-VASALLO,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.


MEMORANDUM OPINION


Appeal from Miami District Court; STEPHEN R. TATUM, judge pro tem, and STEVEN C. MONTGOMERY, judge. Opinion filed May 1, 2020. Affirmed.


*Sara S. Beezley* and *Sarah A. Mills*, of Girard, for appellant.


*Jason V. Vigil*, assistant county attorney, *Elizabeth H. Sweeney-Reeder*, county attorney, and *Derek Schmidt*, attorney general, for appellee.


Before GREEN, P.J., POWELL and SCHROEDER, JJ.


PER CURIAM: Following an evidentiary hearing, the district court denied Ruben Borden-Vasallo's K.S.A. 60-1507 motion, which claimed his appointed appellate counsel on his direct appeal was ineffective for failing to raise a sufficiency of evidence claim regarding his kidnapping conviction. Borden-Vasallo appeals, arguing (1) it was not reasonable professional judgment for his appellate counsel to omit an argument that his kidnapping conviction was supported by insufficient evidence and (2) his appellate counsel's failure to raise this issue prejudiced him because there was a reasonable

1

probability the appeal would have been successful. After a review of the record, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In April 2014 a jury convicted Borden-Vasallo of one count of kidnapping, one count of aggravated robbery, one count of aggravated burglary, and one count of theft. The district court sentenced Borden-Vasallo to 209 months' imprisonment. Borden-Vasallo appealed his convictions and sentence to this court, and an attorney from the Appellate Defender's Office (ADO) was appointed to represent him.

During that representation, appellate counsel corresponded with Borden-Vasallo exclusively via letters so there would be a record of their correspondence. Borden-Vasallo sent counsel letters up until the time the appellate brief was filed in the direct appeal. Through these letters, Borden-Vasallo communicated that he wanted counsel to challenge the sufficiency of the evidence for his kidnapping conviction.

Borden-Vasallo's appellate counsel testified at the evidentiary hearing held on the 60-1507 motion. Prior to writing the appellant's brief, counsel reviewed the transcripts of Borden-Vasallo's preliminary hearing and his jury trial and conducted research surrounding Borden-Vasallo's desired sufficiency of the evidence argument. Counsel testified she had considered raising the issue of sufficiency of the evidence for Borden-Vasallo's kidnapping conviction, but her research prompted her not to raise the issue because, in her professional judgment, she did not think there was a good argument to be made.

Prior to counsel filing the appellant's brief, the ADO's editor reviewed the brief to make sure the cited law was valid and accurate, the legal analysis was complete, and there were no missing issues. This editor was a more experienced attorney who acted in a

2

supervisory role, and it was the office's standard procedure to review briefs before they were filed. Counsel testified she discussed with her editor whether she should raise the issue of sufficiency of evidence on the kidnapping conviction, and together they concluded the argument was likely not going to be a successful issue on appeal. Instead, counsel raised two sentencing-related issues and argued the district court erred in failing to instruct the jury on the defense of compulsion.

After the appellant's brief had been filed, Borden-Vasallo sent counsel at least two letters requesting she help file or file a supplemental brief to raise the issue of sufficiency of the evidence for his kidnapping conviction. Counsel again considered the issue but demurred.

On August 14, 2015, this court affirmed Borden-Vasallo's convictions and sentence. *State v. Borden-Vasallo*, No. 112,088, 2015 WL 5010041, at *8 (Kan. App. 2015) (unpublished opinion). Borden-Vasallo petitioned the Kansas Supreme Court for review, which was denied on June 21, 2016. The mandate was issued on July 1, 2016.

On November 20, 2017, Borden-Vasallo filed his present motion for writ of habeas corpus pursuant to K.S.A. 2017 Supp. 60-1507, alleging he was denied the effective assistance of appellate counsel. Specifically, he argued appellate counsel had been ineffective for failing to raise the issue of sufficiency of evidence for his kidnapping conviction.

The district court held a full evidentiary hearing on the 60-1507 motion. Only Borden-Vasallo's appellate counsel testified. The district court also took judicial notice of the record for Borden-Vasallo's underlying criminal case.

Based on counsel's testimony and the transcript of Borden-Vasallo's jury trial, the district court denied his 60-1507 motion, concluding counsel's decision not to raise the

3

sufficiency of the evidence issue was not ineffective assistance of counsel because she used reasonable professional judgment in her decision. The district court reasoned that based on the caselaw and facts of the case, Borden-Vasallo's requested issue did not have "a very good chance of success, if any at all."

Borden-Vasallo timely appeals.

DID THE DISTRICT COURT ERR IN DENYING BORDEN-VASALLO'S 60-1507 MOTION?

Borden-Vasallo argues the district court erred in denying his 60-1507 motion. Specifically, he raises two arguments. First, he argues it was not reasonable professional judgment for his appellate counsel to omit his requested issue regarding the sufficiency of the evidence of his kidnapping conviction. Second, he argues appellate counsel's failure to raise this issue prejudiced him because there was a reasonable probability the appeal would have been successful.

The district court has three options when handling a K.S.A. 2019 Supp. 60-1507 motion:

> "'(1) The court may determine that the motion, files, and case records conclusively show the prisoner is entitled to no relief and deny the motion summarily; (2) the court may determine from the motion, files, and records that a potentially substantial issue exists, in which case a preliminary hearing may be held. If the court then determines there is no substantial issue, the court may deny the motion; or (3) the court may determine from the motion, files, records, or preliminary hearing that a substantial issue is presented requiring a full hearing.' [Citation omitted.]" *Sola-Morales v. State*, 300 Kan. 875, 881, 335 P.3d 1162 (2014).

The standard of review depends on which of these options a district court uses. 300 Kan. at 881. Here, the district court denied Borden-Vasallo's 60-1507 motion after a

4

full evidentiary hearing. After such a hearing, the district court must issue "findings of fact and conclusions of law on all issues presented." Supreme Court Rule 183(j) (2020 Kan. S. Ct. R. 225). We review the district court's findings of fact to determine whether they are supported by substantial competent evidence and are sufficient to support the district court's conclusions of law. Our review of the district court's ultimate conclusions of law is de novo. *Fuller v. State*, 303 Kan. 478, 485, 363 P.3d 373 (2015).

To prevail on a claim of ineffective assistance of counsel, "a criminal defendant must establish (1) the performance of defense counsel was deficient under the totality of the circumstances, and (2) prejudice, *i.e.*, that there is a reasonable probability the jury would have reached a different result absent the deficient performance." *Sola-Morales*, 300 Kan. at 882 (relying on *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674, *reh. denied* 467 U.S. 1267 [1984]). Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel is highly deferential and requires consideration of all the evidence before the judge or jury. The reviewing court must strongly presume "that counsel's conduct [fell] within the wide range of reasonable professional assistance." *State v. Butler*, 307 Kan. 831, 853, 416 P.3d 116 (2018).

To establish prejudice, the defendant must show a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different, with a reasonable probability meaning "'a probability sufficient to undermine confidence in the outcome.'" *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987 (2014). Under *Strickland*, 466 U.S. at 697: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Starting with the prejudice inquiry first and assuming only for the sake of argument that appellate counsel should have raised the insufficiency of the evidence argument, we examine whether counsel's failure to do so prejudiced Borden-Vasallo.

To find prejudice, we must conclude that an insufficiency of the evidence argument concerning the kidnapping charged would have been successful. If not, Borden-Vasallo was not prejudiced by his appellate counsel's failure to raise the issue and counsel could not have been ineffective. Therefore, we must assess the merits of Borden-Vasallo's argument regarding the sufficiency of the evidence supporting his kidnapping conviction.

> "'When sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations.' [Citation omitted.]" *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

It is only in rare cases where the "evidence was so incredulous no reasonable fact-finder could find guilt beyond a reasonable doubt" that a guilty verdict will be reversed. *State v. Torres*, 308 Kan. 476, 488, 421 P.3d 733 (2018).

To aid us in our evaluation of the merits of any sufficiency of the evidence claim, we review the relevant facts surrounding Borden-Vasallo's kidnapping conviction:

> "In July 2013, Frances Lynette Beck-Burkhart (per her testimony use Burkhart) reported that a man holding a knife and wearing an aqua T-shirt and jeans entered her house. Burkhart was terrified the man would use the knife on her. . . .

> "Burkhart described how Borden-Vasallo pushed her into a chair and covered her eyes. Burkhart was not able to move because her arms were pinned under Borden-Vasallo's weight. In English, he instructed her to hold still and 'don't look.' However, Burkhart was able to catch a glimpse of another man entering her house. The two men communicated with each other in Spanish. Borden-Vasallo told Burkhart he wanted money, so she told him where she kept it. The men took at least $1,500 in cash and some

6

of her jewelry. In total, the men took about $20,000 to $25,000 of her possessions. Before he left, Borden-Vasallo wrapped a cord around Burkhart's wrists and tied a towel over her eyes. After the men left, Burkhart removed the ties and called the police. She believed the men were in her house for about 10 minutes." *Borden-Vasallo*, 2015 WL 5010041, at *1.

The victim testified to the following at trial:

"THE STATE: So, ultimately, after they were through rummaging through your house, what happened next?

"BURKHART: I heard the other guy pick up my keys from the counter. It was the key to my truck with a house key on it and the key to my car with a house key on it. Then, I don't know, they were saying some things.

"THE STATE: Is this all in Spanish?

"BURKHART: Yes. And then the first person in, he raised up and pulled me upright in the chair and put my hands together like this (indicating).

"THE STATE: This is the person you've identified as [Borden-Vasallo] earlier?

"BURKHART: Yes. He reached over across me and grabbed the charger cords for my blood pressure machine and my extension phone that I had on the table beside me. He yanked them off and wrapped them around my wrists.

"THE STATE: Were they tied or just wrapped?

"BURKHART: I don't know.

"THE STATE: You can't recall whether or not he tied it in a knot?

"BURKHART: I don't know if he tied it in a knot or what, but it was wrapped around my wrists several times. He said something to the other guy, and the other guy

7

came from the kitchen behind me. So, I didn't see him even though I was sitting up. He handed him a reddish towel and he tied it around my eyes.

. . . .

"THE STATE:  After they tied you up, what happened next?

"BURKHART: After he tied me up and blindfolded me, then I heard someone go out the door, and then I heard a car start and leave the driveway.

"THE STATE:  Were you able to—did you ever get a look at the car?

"BURKHART: No, I didn't. I was scared to death somebody might—one of them might still be in the house. But then after I heard the car drive away, I figured they wouldn't leave somebody there.

"THE STATE:  Let me ask you this. The fact that you were blindfolded and your hands tied up, did that make it easier for them to escape?

"BURKHART: Well, yes.

"THE STATE:  I know. And did that put—
          "(Court reporter interrupts.)

"THE STATE:  Did that increase the delay in time it took for you to call the police?

"BURKHART: Yes.

"THE STATE:  How long did it take you to get yourself unwrapped from these items?

"BURKHART: Not very long. First thing I did was, I pushed the blindfold off and then I looked, and I started wiggling the cords and wiggling my arms until I was able to slip [one] hand out and then the other one.

"THE STATE: By the time you got that off, did you look around to see if they were still there?

"BURKHART: Yes, I got up and walked to the front door and looked outside, saw no, you know, strange cars or anything. I locked the door and came back to get the phone."

K.S.A. 2013 Supp. 21-5408(a)(2) defines "kidnapping" as "the taking or confining of any person, accomplished by force, threat or deception, with the intent to hold such person . . . to facilitate flight or the commission of any crime." Although his brief is lacking in true substance as to exactly how his argument would have been successful, Borden-Vasallo argues this evidence was insufficient to sustain his conviction for kidnapping. He simply argues on appeal: "There is very minimal evidence in this case that would have supported a 'taking' or 'confining.' The victim was not moved from her chair. She was not bound, cords were loosely wrapped. She easily pushed off the cords and the towel over her eyes." He provides no caselaw in support of his argument.

Under the plain language reading of the statute, there was sufficient evidence for a jury to convict Borden-Vasallo of kidnapping. The victim testified that being tied up and blindfolded made it easier for the robbers to escape and delayed her calling the police. Such a conclusion is supported by caselaw.

In *State v. Buggs*, 219 Kan. 203, Syl. ¶¶ 9-10, 547 P.2d 720 (1976), the Kansas Supreme Court stated:

"The word 'facilitate' in K.S.A. 21-3420 [the prior kidnapping statute] means something more than just to make more convenient. A taking or confining, in order to be

9

said to 'facilitate' a crime, must have some significant bearing on making the commission of the crime 'easier.'"

"If a taking or confining is alleged to have been done to facilitate the commission of another crime, to be kidnapping the resulting movement or confinement:

"(a) Must not be slight, inconsequential and merely incidental to the other crime;

"(b) Must not be of the kind inherent in the nature of the other crime; and

"(c) Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection."

The rule in *Buggs* that teased out the meaning of "facilitate" in relation to the commission of a crime has also been extended to "facilitating flight." *State v. Richmond*, 258 Kan. 449, 453, 904 P.2d 974 (1995). In *Richmond*, the Kansas Supreme Court held there was sufficient evidence to support a kidnapping conviction because:

"Richmond's confining J.J. [the victim] to the closet made the robbery easier. . . . It also enabled him to flee without being apprehended. From inside the closet J.J. could not see Richmond, his vehicle, or the direction in which he traveled. She was unable to call for help from inside the closet, and she delayed coming out because she could not be sure when Richmond left. As a result, when J.J. was able to contact the police, Richmond had made his escape. Furthermore, she was unable to give police a description of his vehicle or any idea where he might have gone." 258 Kan. at 453-54.

Here, while the victim was not confined to a closet, she was restrained and blindfolded so she could not see the robbers' vehicle or the direction they traveled. The victim also was unable to promptly call for help because she was restrained, and she delayed unblindfolding herself because she was scared to death one of the robbers was still in her home. As a result of this confinement, Borden-Vasallo had already made his

10

escape when she freed herself. And like the victim in *Richmond*, Borden-Vasallo's victim was unable to provide the police with any details regarding the robbers' car or the direction they may have gone. Clearly, the tying up and blindfolding of the victim was an act to facilitate flight from the other crimes. The evidence presented at trial was sufficient to sustain a conviction of kidnapping.

Because there was sufficient evidence supporting Borden-Vasallo's kidnapping conviction, he has failed to show his appellate counsel's conduct prejudiced him. The district court did not err by denying his 60-1507 motion.

Affirmed.