NOT DESIGNATED FOR PUBLICATION

No. 121,161

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DON WAYNE WASHINGTON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; THOMAS M. SUTHERLAND, judge. Opinion filed October 9, 2020. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., STANDRIDGE, J., and MCANANY, S.J.

PER CURIAM: The district court denied Don Wayne Washington's motion to suppress drug evidence discovered during a warrantless search of his car following his arrest for driving under the influence (DUI). A jury later convicted Washington of possession of methamphetamine and possession of drug paraphernalia. On appeal, Washington argues that the district court erred in denying his motion to suppress and that the State failed to present sufficient evidence to support his convictions. For the reasons stated below, we affirm.

1

Around 1 a.m. on September 1, 2017, Johnson County Sheriff's Deputy Wesley Peel was driving west on a two-lane portion of Kansas Highway 10 in Johnson County when he observed an eastbound Nissan Sentra that appeared to be speeding. After confirming with his radar that the vehicle was traveling 10 miles over the posted speed limit of 70 miles per hour, Peel initiated a traffic stop near the intersection of Kansas Highways 10 and 7. According to Peel, the Nissan took more than a minute to stop.

Peel made contact with Washington, the driver and only occupant of the Nissan. Peel noted that Washington's eyes appeared to be bloodshot and watery and noticed an odor of consumed alcohol coming from inside the car. Washington advised that he was a musician and was returning home from playing saxophone at a jazz show in Lawrence. When asked to provide his driver's license and proof of insurance, Washington presented his driver's license without a problem but had trouble locating his insurance documents. Peel noted that Washington struggled to answer questions while looking through paperwork and exhibited limited dexterity while searching through the papers, dropping some of them on the floor. Peel's training led him to believe that Washington was exhibiting signs of potential impairment.

Given his belief that Washington might be impaired, Peel administered alphabet and counting tests. First, he asked Washington to say a portion of the alphabet without singing. Washington repeated several letters and sang a portion of the test. Next, Peel asked Washington to count backwards from 79 to 61. Washington skipped a number and counted past 61. Peel then asked Washington to exit the car to perform standardized field sobriety tests, including a walk-and-turn test and a one-leg stand test. During the walk-and-turn test, Washington exhibited five out of eight clues of impairment. During the one-leg stand test, Washington exhibited three out of four clues of impairment.

Peel then asked Washington to submit to a preliminary breath test. Washington's breath-alcohol concentration was 0.042, which was below the legal limit of impairment in Kansas and did not correspond to what Peel thought to be Washington's level of impairment. Based on his observations, Peel believed that Washington had something other than alcohol in his system and that he was too impaired to safely drive. As a result, Peel arrested Washington for DUI.

Following Washington's arrest, Peel and Deputy Nicholas Becker searched Washington's car. While searching the rear passenger compartment, Becker observed several red plastic straws, including three straws that appeared to have been cut into a smaller size and contained a white powder residue inside. According to Becker, cut straws may be used to ingest drugs. One of the cut straws was on the back passenger seat and two more were under the front passenger seat. Near the straws under the front passenger seat, Becker located a small plastic bag containing a white crystalline substance later identified as methamphetamine. Under the driver's seat, Becker also found an open bottle of Viaka vodka containing some liquid that smelled like alcohol. Peel discovered an unopened bottle of Viaka vodka, an unopened can of Bud Ice, a wooden saxophone reed under some papers in the passenger seat, and an instrument in the trunk.

Washington later submitted to an Intoxilyzer breath test, which showed that his breath-alcohol content was 0.020. Washington also provided a urine sample that tested positive for methamphetamine and amphetamine.

The State charged Washington with possession of methamphetamine, DUI, possession of drug paraphernalia, failure to display insurance, transporting an open container, and speeding.

Washington filed a pretrial motion to suppress the drug evidence discovered in his car, claiming the search violated his rights against unreasonable searches and seizures

under the Fourth Amendment to the United States Constitution. Relying on *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009), Washington argued that before searching his car, law enforcement lacked a reasonable belief that evidence related to the crime of DUI would be found inside.

At a suppression hearing, the State presented testimony from Deputy Peel. During his testimony, Peel explained why he searched Washington's car incident to arrest:

> "We were searching for fruits of the crime due to the fact that I had noticed the smell of alcohol emanating from the vehicle on my initial approach, and Mr. Washington's behavior and clues of impairment that he was showing during the testing and during my interaction with him, I was led to believe—or I was—felt I had probable cause to believe that he was under the influence of alcohol and/or drugs to a point that was impairing him beyond the ability to operate a motor vehicle."

Peel testified he initially believed Washington was under the influence of alcohol based on the odor of alcohol and the results of the field sobriety tests. But after Washington's preliminary breath test result was lower than what Peel thought to be Washington's level of impairment, Peel's training and experience suggested that Washington might also be under the influence of drugs. As a result, Peel concluded that evidence of Washington's impairment could be inside the car.

After hearing testimony from Deputy Peel and considering written and oral argument from counsel, as well as the evidence presented at the preliminary hearing, the district court denied Washington's motion to suppress. Specifically, the court found that Washington's arrest for DUI was proper and that the subsequent search of his car was a valid search incident to arrest.

A jury later convicted Washington of possession of methamphetamine, possession of drug paraphernalia, failure to display insurance, transporting an open container of

alcohol, and speeding. The jury acquitted him of DUI. The district court imposed a controlling 20-month prison sentence but suspended the sentence and granted Washington a 12-month term of probation.

LEGAL ANALYSIS

Washington raises two issues on appeal. First, he argues the district court erred in denying his motion to suppress the drug evidence found in his car because law enforcement lacked a reasonable belief that evidence of DUI would be found inside. Second, Washington asserts the State failed to present sufficient evidence to support his convictions for possession of methamphetamine and possession of drug paraphernalia because the State failed to prove he knowingly possessed the drugs and paraphernalia found in his car. We address each allegation in turn.

*Motion to suppress*

The standard of review for a district court's decision on a motion to suppress has two components. We review the district court's factual findings to determine whether they are supported by substantial competent evidence. The ultimate legal conclusion, however, is reviewed using a de novo standard. In reviewing the factual findings, we do not reweigh the evidence or assess the credibility of witnesses. Where, as here, the material facts supporting a district court's decision on a motion to suppress are not in dispute, the ultimate question of whether to suppress is a question of law over which an appellate court has unlimited review. *State v. Hanke*, 307 Kan. 823, 827, 415 P.3d 966 (2018).

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. Any warrantless search is per se unreasonable unless it falls within one of the exceptions to the search warrant requirement recognized in Kansas. *State v.*

*Hubbard*, 309 Kan. 22, 33, 430 P.3d 956 (2018). The district court found that the search in this case was a valid search incident to arrest. Under that exception, a law enforcement officer making a lawful arrest can lawfully search the arrestee and the area within the arrestee's immediate control without first obtaining a warrant. *State v. Torres*, 308 Kan. 476, 484, 421 P.3d 733 (2018). This exception serves two purposes: (1) protecting officer safety by allowing a search for weapons an arrestee could reasonably access and (2) preventing an arrestee from destroying or concealing evidence of the crime of arrest. 308 Kan. at 483. The State bears the burden to prove that a search and seizure was lawful. *State v. Ton*, 308 Kan. 564, 568, 422 P.3d 678 (2018).

In *Gant*, the United States Supreme Court delineated the parameters of the search incident to arrest exception. Specifically, the Court held that a vehicle may be searched incident to a recent occupant's arrest only when (1) the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search or (2) it is "'reasonable to believe'" evidence relevant to the crime of arrest might be found in the vehicle. 556 U.S. at 343-44 (citing *Thornton v. United States*, 541 U.S. 615, 632, 124 S. Ct. 2127, 158 L. Ed. 2d 905 [2004] [Scalia, J., concurring]). Under the facts presented in the case before it, the *Gant* Court determined that it was not reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle; specifically, the defendant "was arrested for driving with a suspended license—an offense for which police could not expect to find evidence in the passenger compartment of Gant's car," unlike the drug offenses in some of the Court's prior cases. 556 U.S. at 344; see *Thornton*, 541 U.S. 615 (search of car conducted after recent occupant of car arrested for possession of drugs); *New York v. Belton*, 453 U.S. 454, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981) (same).

In concluding that a search incident to a lawful arrest is justified when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle, the *Gant* Court explained that in many cases, including when a recent occupant is

6

arrested for a traffic violation, no reasonable belief that the vehicle would contain relevant evidence could exist. 556 U.S. at 343. But in some cases, like those involving drug offenses, "the offense of arrest will supply a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein." 556 U.S. at 344.

Courts have adopted two interpretations of *Gant*'s "it is reasonable to believe" language. Under the first interpretation, some courts have determined that the Supreme Court created a categorical link between the nature of some crimes and law enforcement's right to search a vehicle. Under this interpretation, the nature of the crime, regardless of the facts of the case, signals whether a reasonable belief relevant to the crime of arrest exists. *State v. Ewertz*, 49 Kan. App. 2d 8, 11, 305 P.3d 23 (2013). The second interpretation of *Gant* is that the Supreme Court created a standard akin to reasonable suspicion. *Ewertz*, 49 Kan. App. 2d at 12. Reasonable suspicion requires a particularized and objective basis for believing evidence relevant to the crime of arrest would be in the vehicle. In determining whether reasonable suspicion exists, law enforcement must consider the totality of the circumstances, but it is "a less demanding standard than probable cause and requires considerably less than a preponderance of the evidence." *State v. Edgar*, 296 Kan. 513, 521, 294 P.3d 251 (2013).

Here, the district court did not cite *Gant* or otherwise specifically address whether it was reasonable to believe evidence of Washington's arrest would be found in the car; instead, the court held that Washington's lawful arrest for DUI provided a legal basis for a search incident to arrest. Thus, the district court's decision appears to follow the categorical approach that Washington's crime of arrest supplied a basis for searching his car.

To date, the Kansas Supreme Court has declined to adopt the categorical link interpretation of *Gant*'s "it is reasonable to believe" language. See *Torres*, 308 Kan. at 484-85 (leaving open for future consideration the question of whether *Gant* allows for a

per se right to search any time officers arrest a drug suspect who exits a car). And this court has expressed conflicting positions on whether a categorical link exists. In *Ewertz*, a majority panel of this court found, "like drug offenses, driving under the influence is likely within the category of crimes identified by the *Gant* Court as supplying a basis for searching a vehicle." 49 Kan. App. 2d at 13. The majority neither adopted the categorical test or rejected it; instead, it concluded that the search was lawful regardless of which test was applied. But Judge Tom Malone wrote a separate concurring opinion, suggesting that Kansas courts should reject a per se rule of a categorical link between an arrest for DUI and the right to search the driver's vehicle. 49 Kan. App. 2d at 17 (Malone, J., concurring) ("In many instances, a law enforcement officer investigating a DUI may develop probable cause to arrest the driver without having reason to believe that evidence relevant to the crime might be found in the vehicle."); see *State v. Blanco*, No. 119,558, 2018 WL 6816187, at *7 (Kan. App. 2018) (unpublished opinion) ("DUI should not fall into the category of crimes that always provides a reasonable belief that relevant evidence of the crime may be in the vehicle.").

Even so, the State suggests we find that an arrest for the crime of DUI categorically supplies a basis for a vehicle search. But we need not make that determination here because, under the totality of the circumstances, Deputy Peel had a reasonable belief that evidence of DUI might be found in Washington's car. See *Torres*, 308 Kan. at 487-88 (citing *Gant* in finding that search incident to lawful arrest was justified under totality of the circumstances where law enforcement had objectively reasonable belief that evidence of crime of arrest might be found in arrestee's car).

Washington contends that neither Deputy Peel nor Deputy Becker had a reasonable belief that they would find any evidence of DUI in the car. Specifically, Washington claims that Peel had no reason to believe that he was under the influence of drugs and that Becker was unaware the search conducted was for the purpose of determining whether there was evidence of drugs in the car. Washington notes that Peel's

testimony was limited to smelling consumed alcohol inside the car and that Peel did not testify about any burning or chemical smells. Washington also notes that neither deputy observed any of the evidence in plain sight, saw him handle the straws or drugs, or saw him place anything in the back or passenger seat. Washington claims it was not reasonable for Peel to believe that he recently had ingested any stimulants based on Peel's observations of hyperactivity and an inability to focus.

Washington's arguments ignore the totality of the circumstances present here. Deputy Peel observed that Washington's eyes were bloodshot and watery. Peel smelled the odor of consumed alcohol inside the car. Peel noted that Washington had issues with dexterity and difficulty with tasks requiring him to divide his attention. Washington exhibited several clues of impairment while performing the field sobriety tests. Based on these observations, Peel believed that he was investigating an alcohol DUI. But after the preliminary breath test showed that Washington's breath-alcohol concentration was inconsistent with the level of impairment Peel had observed, Peel believed there was another potential source of Washington's intoxication. As a result, Peel searched the car to investigate the other potential source of intoxication. Peel also testified that he was trained and certified to recognize different behaviors associated with methamphetamine use. This behavior can include hyperactivity, an inability to focus attention, and erratic movements. Peel said that a methamphetamine user may appear lethargic once the drug starts to metabolize through the user's system. Peel also testified that drugs affect people in different ways.

Given the totality of the circumstances here, law enforcement had an objectively reasonable belief that evidence of DUI might be found in Washington's car. See *Gant*, 556 U.S. at 343-44. As a result, the search incident to a lawful arrest exception to the warrant requirement applies to these facts. The district court did not err in denying Washington's motion to suppress.

*Sufficiency of the evidence*

Washington argues the State failed to present sufficient evidence to support his convictions for possession of methamphetamine and possession of drug paraphernalia. Specifically, Washington contends the State did not prove that he had knowledge of and intent to control the drugs and drug paraphernalia, elements essential to possession. He asserts that the jury's findings of guilt were based upon inferences that were unsupported by the evidence.

> "'When sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations.' [Citation omitted.]" *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

A verdict may be supported by circumstantial evidence, if such evidence provides a basis for a reasonable inference by the fact-finder regarding the fact in issue. Circumstantial evidence, in order to be sufficient, need not exclude every other reasonable conclusion or inference. *State v. Logsdon*, 304 Kan. 3, 25, 371 P.3d 836 (2016). To the extent we must interpret and apply the statutory definition of possession, our review is unlimited. See *State v. Alvarez*, 309 Kan. 203, 205, 432 P.3d 1015 (2019).

The State charged Washington with possession of methamphetamine under K.S.A. 65-4107(d)(3) and possession of drug paraphernalia (the cut straws) under K.S.A. 2017 Supp. 21-5709(b)(2). As used in those statutes, "possession" is defined as "joint or exclusive control over an item with knowledge of and intent to have such control or knowingly keeping some item in a place where the person has some measure of access and right of control." K.S.A. 2017 Supp. 21-5701(q). In other words, possession may be immediate and exclusive, jointly held with another, or constructive, as when an item is

knowingly kept in a place where a defendant has some measure of access and right of control. A person acts "knowingly" or "with knowledge" with respect to the nature of such person's conduct or to circumstances surrounding such person's conduct when such person is aware of the nature of such person's conduct or that the circumstances exist. K.S.A. 2017 Supp. 21-5202(i). Proof of the required elements for possession of a controlled substance may be established by circumstantial evidence. *State v. Washington*, 244 Kan. 652, 654, 772 P.2d 768 (1989); *State v. Gunn*, 29 Kan. App. 2d 337, 343, 26 P.3d 710 (2001).

Washington argues the State failed to prove that he had knowledge of, or intent to have sufficient control over, the methamphetamine or drug paraphernalia. Washington contends the jury could only infer that he had exclusive possession of the car because the State failed to present any evidence that he was the only person in the car that day or anytime preceding his arrest. When a defendant is in nonexclusive possession of the location where illegal drugs are found, the mere presence of or access to the drugs, standing alone, is insufficient to demonstrate possession absent other incriminating circumstances. *State v. Rosa*, 304 Kan. 429, 434, 371 P.3d 915 (2016). Washington asserts that additional incriminating circumstances do not exist here.

But there is no support for Washington's argument that this is a nonexclusive possession case. Washington was the lone occupant of the car when Peel pulled him over, and no evidence suggested that the car belonged to anyone but Washington. Nor was there any evidence that anyone else had recently been inside, or had access to, Washington's car. Generally, when a person is the sole occupant of a vehicle or residence there is a logical inference of that person's dominion and control over the objects inside. See *Rosa*, 304 Kan. at 434. Here, the evidence shows that Washington exercised dominion and control over the objects inside the car. Washington advised that he had been playing the saxophone in Lawrence. A wooden saxophone reed was found in the passenger seat underneath some papers, and an instrument was in the trunk. The bag of

11

methamphetamine and the cut straws were found under the passenger seat and close to the center console, within Washington's reach and located among his possessions.

Under the facts present here, sufficient circumstantial evidence existed from which the jury could create a reasonable inference that Washington had exclusive possession of the objects inside the car and/or had "some measure of access and right of control" over the methamphetamine and drug paraphernalia under the passenger seat. See K.S.A. 2019 Supp. 21-5701(q). Viewed in a light most favorable to the prosecution, the circumstantial evidence in this case could lead a rational fact-finder to find Washington guilty beyond a reasonable doubt of both possession of methamphetamine and possession of drug paraphernalia.

Affirmed.